## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| ENDURE INDUSTRIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | C.A. No. 3:20-cv-03190-K |
| VIZIENT, INC., VIZIENT SUPPLY, LLC, | § | |
| VIZIENT SOURCE, LLC, NOVATION, | § | |
| LLC, NOVATION VENTURES, LLC, and | § | |
| PROVISTA, INC., | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

FACTUAL BACKGROUND ......................................................................................... 4

I.      GPOs negotiate contracts with suppliers on behalf of members ...................................... 4

II.      Endure is a small start-up that sells medical products ........................................ 6

III.      Endure bid for a Vizient contract, lost, and then filed this lawsuit.................................. 7

LEGAL STANDARDS ................................................................................................. 8

I.      Endure must plead sufficient facts to state a plausible, not just possible, claim .............. 8

II.      Antitrust laws protect harm to competition, not competitors ........................................... 8

ARGUMENT ............................................................................................................... 9

I.      Endure does not plausibly plead a relevant market ............................................... 9

II.      Endure does not plausibly plead that Vizient had market and monopoly power............. 13

III.      Endure does not plausibly plead anticompetitive conduct................................................ 15

     A.      Endure does not plausibly plead GPO suppliers have exclusive deals (Count I) ................................................................................................... 15

     B.      Endure does not plausibly plead Vizient sells at predatory prices (Count II)..................................................................................................... 20

     C.      Endure does not plausibly plead Vizient refused to deal with it (Count III) ....... 22

         1)      Endure pleads no exception creating a duty to deal with Endure ........... 22

         2)      Endure concedes Vizient's GPO is not essential to Endure and the market ........................................................................................... 23

IV.      Endure does not plausibly plead Vizient attempted to monopolize (Count IV) .............. 24

CONCLUSION............................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adderall XR Antitrust Litig.*,
754 F.3d 128 (2d Cir. 2014)..................................................................23

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
592 F.3d 991 (9th Cir. 2010) ...................................................16, 18, 19

*Am. Airlines, Inc. v. Travelport Ltd.*,
2011 WL 13047291 (N.D. Tex. Nov. 21, 2011)....................................15

*Am. Airlines, Inc. v. Travelport Ltd.*,
2012 WL 12507645 (N.D. Tex. Feb. 28, 2012)....................................18

*Apani Sw., Inc. v. Coca-Cola Enters., Inc.*,
300 F.3d 620 (5th Cir. 2002) ........................................9, 11, 13, 15, 16, 18

*ASAP Paging Inc. v. CenturyTel of San Marcos Inc.*,
137 F. App'x 694 (5th Cir. 2005) ..........................................................23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................8, 16, 24, 25

*Branta, LLC v. Newfield Prod. Co.*,
310 F. Supp. 3d 1166 (D. Colo. 2018)...................................................17

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993)................................................................8, 18, 20, 21

*Brooks v. United Dev. Funding III, L.P.*,
2020 WL 6132230 (N.D. Tex. Apr. 15, 2020) ........................................4

*Campfield v. State Farm Mut. Auto. Ins. Co.*,
532 F.3d 1111 (10th Cir. 2008) .............................................................12

*Cedra Pharmacy Hous., LLC v. UnitedHealth Grp., Inc.*,
2019 WL 1433600 (S.D. Tex. Mar. 7, 2019)..........................................17

*Chamberlain Grp., Inc. v. Techtronic Indus. N. Am., Inc.*,
2017 WL 4269005 (N.D. Ill. Sept. 26, 2017) ..........................................1

*Chapman v. N.Y. State Div. Youth*,
  546 F.3d 230 (2d Cir. 2008)..................................................................................12

*Cinema Vill. Cinemart, Inc. v. Regal Ent. Grp.*,
  2016 WL 5719790 (S.D.N.Y. Sept. 29, 2016), *aff'd*, 708 F. App'x 29 (2d Cir.
  2017) ......................................................................................................................10

*City of Coll. Station v. City of Bryan*,
  932 F. Supp. 877 (S.D. Tex. 1996) .......................................................................24

*Clean Water Opportunities, Inc. v. Willamette Valley Co.*,
  759 F. App'x 244 (5th Cir. 2019) ..........................................................................20

*Colonial Med. Grp., Inc. v. Catholic Healthcare West*,
  2010 WL 2108123 (N.D. Cal. May 25, 2010) .......................................................12

*Cont'l Auto. Sys., Inc. v. Avanci, LLC*,
  2020 WL 5627224 (N.D. Tex. Sept. 10, 2020)........................................................4

*David L. Aldridge Co. v. Microsoft Corp.*,
  995 F. Supp. 728 (S.D. Tex. 1998) .......................................................................24

*Dealer Comput. Servs., Inc. v. Ford Motor Co.*,
  2006 WL 801033 (S.D. Tex. Mar. 28, 2006), *aff'd*, 190 F. App'x 396 (5th Cir.
  2006) ......................................................................................................................23

*Dickson v. Microsoft Corp.*,
  309 F.3d 193 (4th Cir. 2002) ................................................................................13

*Dillon Materials Handling, Inc. v. Albion Indus.*,
  567 F.2d 1299 (5th Cir. 1978) ..............................................................................18

*Doctor's Hosp. of Jefferson, Inc. v. Se. Med. All., Inc.*,
  123 F.3d 301 (5th Cir. 1997) ..........................................................................11, 19

*Eisai, Inc. v. Sanofi Aventis U.S., LLC*,
  821 F.3d 394 (3d Cir. 2016)........................................................................16, 18, 19

*EuroTec Vertical Flight Sols., LLC. v. Safran Helicopter Engines S.A.A.*,
  2019 WL 3503240 (N.D. Tex. Aug. 1, 2019)......................................................11, 14

*Felder's Collision Parts, Inc. v. All Star Advert. Agency, Inc.*,
  777 F.3d 756 (5th Cir. 2015) ................................................................................21

*Geddie v. Seaton*,
  2006 WL 2263335 (N.D. Tex. Aug. 8, 2006)................................8, 9, 18, 20, 21, 25

*Glynn-Brunswick Hosp. Authority v. Becton*,
    159 F. Supp. 3d 1361 (S.D. Ga. 2016)............................................................12

*Haas Outdoors, Inc. v. Dryshod Int'l, LLC*,
    2020 WL 555385 (W.D. Tex. Feb. 4, 2020)...................................................10

*Hicks v. PGA Tour, Inc.*,
    897 F.3d 1109 (9th Cir. 2018) .......................................................................12

*Honeywell Int'l Inc. v. MEK Chem. Corp.*,
    2018 WL 6737514 (N.D. Tex. July 5, 2018).................................9, 13, 16, 17, 20

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
    626 F.3d 1327 (11th Cir. 2010) .....................................................................11

*Johnson v. Hosp. Corp. of Am.*,
    95 F.3d 383 (5th Cir. 1996) ...........................................................................16

*Kerwin v. Casino*,
    802 F. App'x 723 (3d Cir. 2020) ...................................................................24

*Kochert v. Greater Lafayette Health Servs., Inc.*,
    372 F. Supp. 2d 509 (N.D. Ind. 2004), *aff'd*, 463 F.3d 710 (7th Cir. 2006)..........................24

*Little Rock Cardiology Clinic P.A. v. Baptist Health*,
    591 F.3d 591 (8th Cir. 2009) .........................................................................12

*Lloyd's Material Supply Co., Inc. v. Regal Beloit Corp.*,
    2017 WL 5172206 (C.D. Cal. June 27, 2017) ...............................................22

*Lockheed Martin Corp. v. Boeing Co.*,
    314 F. Supp. 2d 1198 (M.D. Fla. 2004)........................................................10

*Marion HealthCare, LLC v. S. Ill. Healthcare*,
    2013 WL 4510168 (S.D. Ill. Aug. 26, 2013) .................................................12

*Maris Distrib. Co. v. Anheuser-Busch, Inc.*,
    302 F.3d 1207 (11th Cir. 2002) .....................................................................13

*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*,
    751 F.3d 368 (5th Cir. 2014) ...............................................................8, 13, 14

*Mary Kay Inc. v. Reibel*,
    2018 WL 2984865 (N.D. Tex. June 14, 2018) ..............................................25

*MM Steel, L.P. v. JSW Steel (USA) Inc.*,
    806 F.3d 835 (5th Cir. 2015) .........................................................................22

*Omega Env't Inc. v. Gilbarco, Inc.*,
  127 F.3d 1157 (9th Cir. 1997) ...............................................................19

*Oxford Glob. Res., Inc. v. Weekley-Cessnun*,
  2004 WL 2599898 (N.D. Tex. Nov. 12, 2004)...........................................21, 24, 25

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
  555 U.S. 438 (2009)...................................................................................22

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*,
  615 F.3d 412 (5th Cir. 2010) ...........................................................10, 11, 12

*Queen City Pizza, Inc. v. Domino's Pizza Inc.*,
  124 F.3d 430 (3d Cir. 1997)......................................................................11

*Rockbit Indus. U.S.A., Inc. v. Baker Hughes, Inc.*,
  802 F. Supp. 1544 (S.D. Tex. June 24, 1991)...........................................9

*Ryko Mfg. Co. v. Eden Servs.*,
  823 F.2d 1215 (8th Cir. 1987) ...............................................................15

*Se. Mo. Hosp. v. C.R. Bard, Inc.*,
  2008 WL 199567 (E.D. Mo. Jan. 22, 2008) ...........................................17

*Se. Mo. Hosp. v. C.R. Bard, Inc.*,
  642 F.3d 608 (8th Cir. 2011) .......................................................12, 18, 19

*Seagood Trading Corp. v. Jerrico, Inc.*,
  924 F.2d 1555 (11th Cir. 1991) ..............................................................19

*Star Tobacco Inc. v. Darilek*,
  298 F. Supp. 2d 436 (E.D. Tex. 2003)......................................................11

*Stewart Glass & Mirror, Inc., v. U.S. Auto Glass Disc. Ctrs., Inc.*,
  200 F.3d 307 (5th Cir. 2000) .............................................................13, 14

*Stokes v. OneWest Bank, F.S.B.*,
  2014 WL 5473193 (N.D. Tex. Oct. 28, 2014).............................................1

*T. Harris Young & Assocs., Inc. v. Marquette Elecs., Inc.*,
  931 F.2d 816 (11th Cir. 1991) .................................................................12

*Tampa Elec. Co. v. Nashville Coal Co.*,
  365 U.S. 320 (1961)..................................................................................18

*Taylor Publ'g Co. v. Jostens, Inc.*,
  216 F.3d 465 (5th Cir. 2000) ...........................................................20, 21

*TCA Bldg. Co. v. Nw. Res. Co.*,
    873 F. Supp. 29 (S.D. Tex. 1995) .......................................................................24

*TI Inv. Servs., LLC v. Microsoft Corp.*,
    23 F. Supp. 3d 451 (D.N.J. 2014) .....................................................................22

*Tops Mkts., Inc. v. Quality Mkts., Inc.*,
    142 F.3d 90 (2d Cir. 1998) ................................................................................15

*Tristar Invs., Inc. v. Am. Tower Corp.*,
    2014 WL 1327663 (N.D. Tex. Apr. 3, 2014) .................................................13, 15

*Varentec, Inc. v. Gridco, Inc.*,
    2017 WL 2438846 (D. Del. June 6, 2017) ..........................................................21

*Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004) ....................................................................................23, 24

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
    257 F.3d 256 (2d Cir. 2001) ..............................................................................16

*Wampler v. Sw. Bell Tel. Co.*,
    597 F.3d 741 (5th Cir. 2010) .............................................................................11

**Statutes**

15 U.S.C. § 1 .............................................................................................................15

15 U.S.C. § 2 .......................................................................................................20, 24

15 U.S.C. § 14 ...........................................................................................................16

Defendants ("Vizient")[1] move for an order dismissing Plaintiff Endure Industries, Inc.'s ("Endure") Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Antitrust laws protect competition and therefore consumers, not competitors. The problem for Endure is that what it calls predatory prices and de facto exclusive deals are really attractive discounts Endure's competitors (not Vizient) offer consumers; what Endure calls a refusal to deal is really an inherently competitive bid process that Endure lost (as did many other bidders); and what Endure calls an essential facility is really just one avenue among many others through which it can (and concededly does) sell. Liberal use of antitrust jargon does not change this.

Healthcare Group Purchasing Organizations ("GPOs") like Vizient solicit competitive bids from medical product suppliers like Endure on behalf of their healthcare provider members, using the combined volume opportunity of these purchasers to obtain the best prices for them. Suppliers, attracted by high-volume potential, fiercely compete for GPO contracts and provide attractive discounts to win them. While GPOs benefit suppliers and consumers, Vizient's members are not obligated to purchase anything through a contract between Vizient and a supplier. Members can purchase directly from a supplier like Endure, through another GPO's suppliers, or nothing at all.

Endure participated in Vizient's competitive bid process, hoping to become a GPO supplier. Endure was not excluded from the GPO, let alone the market; it simply did not win the bid. Not having a chance to compete, and competing and not winning, are very different events

---

[1] Endure sues six different Defendants but immediately defines them "*collectively and alternatively*" as "Vizient." Compl. at 1. This group pleading fails to state a claim. *Stokes v. OneWest Bank, F.S.B.*, 2014 WL 5473193, at *2-3 (N.D. Tex. Oct. 28, 2014); *Chamberlain Grp., Inc. v. Techtronic Indus. N. Am., Inc.*, 2017 WL 4269005, at *3 (N.D. Ill. Sept. 26, 2017). For purposes of this motion and ease of analyzing the Complaint, however, Defendants use "Vizient." Unless otherwise noted, all internal citations, quotations, alterations, and punctuation are omitted, and all emphasis is added. All citations to "App." are to the Appendix submitted herewith.

when viewed through the antitrust lens. At bottom, Endure is a supplier that competed and lost, not a champion of competition or consumers or a victim of an unlawful process.

Lacking a viable claim, Endure grasps to sustain one by throwing the antitrust hornbook at Defendants. The Complaint is accordingly riddled with legal and factual inconsistencies, and illogical if not economically impossible theories. Endure, for example, simultaneously alleges:

- GPO contract prices are so low that Endure cannot compete for sales to GPO members, yet the same contracts impose "dramatically increase[d]" prices on those same members; and

- GPO contract prices are much higher than Endure's, yet members will not purchase from Endure and risk losing discounts in GPO contracts that make them too attractive.

Pleading alternative claims is one thing. Pleading contradictory facts and theories is another and renders the Complaint fatally defective. Without a solid theory or facts to support it, the Complaint is a collection of legal conclusions and antitrust buzzwords like "penalties," "bundles," and "exclusive deals." But Endure does not identify a single contract's penalties, bundles, exclusivity requirements, discounts, or products. The Supreme Court held in *Twombly* this does not suffice.

That leads to what this case is really about: an attack on GPOs generally—not Vizient specifically, nor any Vizient contract particularly. Endure claims there is too much competition for GPO contracts, and consumers benefit so much from them that it cannot compete with suppliers who win. Endure pleads nothing more than lawful competition. Endure wants this Court to be the first one to declare consumer-owned GPOs anticompetitive, prohibit consumers from receiving discounted rates, and strip leading suppliers of hard-fought, legally-acquired competitive advantages. Appellate courts across the country have held that GPO contracts like the ones here are not anticompetitive, and the Court should too as a matter of pleading and law.

*First*, Endure fails to plead a plausible relevant market, defining no specific product market and artificially limiting its scope to hospitals rather than all healthcare providers that buy supplies. Failure to plead a plausible relevant market is one of the most common reasons courts dismiss

antitrust cases, including GPO ones. Without a plausible relevant market, as here, there is no lens through which the Court can assess whether the alleged conduct unreasonably harmed competition.

*Second*, Endure does not adequately allege that Vizient had market or monopoly power. Two sentences in the over 172-paragraph Complaint allege "Vizient controls more than 50% of all medical device sales made to hospitals." This lacks any factual support, and according to Endure, medical devices are *not* the relevant products, and hospitals are *not* the only buyers.

*Third*, Endure cannot bring its exclusive dealing claim because it alleges no concerted—as opposed to unilateral—action to exclude Endure. In any event, GPO contracts are not exclusive and do not foreclose competition: they do not force Vizient's members to purchase anything, nor do they prevent them from purchasing from anyone. Endure had the chance to, and still can, compete for sales to Vizient's members and non-members—which is why courts hold that GPO contracts like these are not illegal exclusive dealing arrangements.

*Fourth*, Endure's predatory pricing claim has no legs. Endure repeatedly alleges that Vizient's GPO contracts had "elevated" and "inflated" prices—not below-cost prices. And there are *zero* allegations that Vizient would recoup any losses from below-cost pricing by destroying competition and then artificially inflating prices once there was none left, as required for this claim.

*Fifth*, Vizient had no antitrust duty to deal with Endure as a matter of law, and Endure has pled no exception that would create such a duty to deal because it cannot: there was no prior course of dealing between Endure and Vizient that Vizient terminated for illegal ends.

*Sixth*, Endure concedes Vizient's GPO is not an "essential facility"—the most "incoherent" basis for antitrust liability. Endure had access to Vizient's GPO when it bid, and it still does. No more is required. Regardless, Vizient's GPO is not essential because there are "many" other GPOs, and Endure can (and does) sell to consumers through non-GPO channels.

**Finally**, Endure's attempted monopolization claim is the paradigm of a mere formulaic recitation of legal elements. There is nothing to analyze, and the Court can summarily dismiss it.

## FACTUAL BACKGROUND[2]

### I.   GPOs negotiate contracts with suppliers on behalf of members

Vizient is a Group Purchasing Organization. Healthcare GPOs, which have existed for well over 30 years, negotiate contracts with manufacturers of medical supplies on behalf of their members—healthcare providers like clinics, nursing homes, physician offices, hospitals, and more. Compl. ¶¶ 29-31. Using the collective purchasing power of its members, GPOs obtain favorable pricing from suppliers hungry for potential high-volume sales. *Id*. Accordingly, all hospitals are members of "*at least* one GPO," and many GPOs are member-owned. *Id*. ¶¶ 30, 33. Yet, members like hospitals do not have to join any GPO, let alone Vizient's. *Id*. ¶¶ 33-34, 49.

Vizient selects suppliers for its members through competitive bid processes. *Id.* ¶ 5(b). Vizient publishes requests for proposals on its website, and suppliers bid to supply a specific product. App. 2-8. While analyzing bids, Vizient negotiates potential contract terms with suppliers pursuant to which its members *can* purchase products. Compl. ¶ 43. Vizient then awards either a sole-source contract to one supplier or a multi-source contract to multiple suppliers for a specific product type. App. 14, 29, 40, each at ¶ 11(A); App. 20 ¶ 12.

Vizient members and suppliers can participate in a voluntary rebate program called the Impact Standardization Program ("ISP"). Compl. ¶¶ 72, 80. While voluntary, it benefits suppliers

---

[2] This comes from the Complaint's allegations and other properly-considered material. As further detailed in counsel's declaration, the Court may consider the bids and agreements "referred to" in the Complaint and "central to [Endure's] claims." *Cont'l Auto. Sys., Inc. v. Avanci, LLC*, 2020 WL 5627224, at *3 (N.D. Tex. Sept. 10, 2020) (subsequent history omitted); *e.g.*, Compl. ¶¶ 47, 51, 62-63, 107-20; *see* App. 9-24. Further, the Court can take judicial notice of public websites. *Brooks v. United Dev. Funding III, L.P.*, 2020 WL 6132230, at *33–34 (N.D. Tex. Apr. 15, 2020); *see* App. 1-8, 47-60. Endure's factual allegations are mostly inaccurate and appear largely based on information and belief. Compl. ¶ 22. Defendants still take them as true for purposes of the motion.

and members. Members who participate receive rebates if they purchase certain volumes from suppliers who participate, and it improves the procurement process for products. *Id.* ¶¶ 81-87. The ISP contains approximately 13 programs covering hundreds of products. *Id.* ¶¶ 75, 86, 103. Each "program" covers medical supplies that fall within a general type of care (e.g., orthopedic care), complementary products are sold by "category" within each program (e.g., sports bracing, casting and splinting), and various similar "products" are sold within each category (e.g., different types of sports bracing). *See id.* ¶¶ 75-76. Each product category within a program can have several suppliers. *Id.* ¶ 77. When joining a specific program, a member states it will attempt to purchase a certain volume of each product category (excluding allowed opt-out categories). *See id.* ¶¶ 84-85. If the member purchases 75% of its projected volume across the entire program, and 90% of its projected volume for a specific product category, the member can earn supplier rebates for that product category. *Id.* ¶¶ 86-87. If members do not achieve volume targets, they simply pay for the items based on the GPO's negotiated discount without additional rebates under the ISP.[3]

Members who purchase through a GPO—*after* reviewing and then accepting the GPO contract terms for that particular product—purchase directly from the supplier or distributor. App. 11-12, 17-18, 26-27, 38. The GPO does not participate in the transaction and is not part of the distribution channel. *Id.* Indeed, Vizient does not manufacture, purchase, store, distribute, or sell products. *Id.*; *see* Compl. ¶¶ 57-58, 61-62.

There are no purchasing requirements of any kind on Vizient's members. To start, members do not have to purchase anything through the GPO. App. 15 ¶ 18(D), 21 ¶ 19(D), 30 ¶ 18(D), 41 ¶ 18(F). They can purchase directly from GPO suppliers under their own contracts with those

---

[3] Endure calls these "penalties" but concedes they are rebates. *E.g.*, Compl. ¶¶ 90 ("hoped-for cost savings), 92 ("to qualify for supplier rebates"), 104 ("suppliers . . . pay rebates to [m]ember[s]").

suppliers, directly from non-GPO suppliers like Endure, or through another GPO. Further, even members who choose to purchase through the GPO have no obligation to purchase any specific product, from any specific manufacturer, in any specific amount. *Id.* Vizient can even terminate its non-exclusive supplier contracts upon short notice "at any time . . . *without cause.*" App. 13, 19, 28, 39, each at ¶ 4(B).

Novaplus is a private-label brand name that manufacturers can license from Vizient. App. 23; *see* Compl. ¶¶ 41, 51. A manufacturer that wins a Vizient contract to sell splints may sell those splints using the Novaplus label rather than the manufacturer's proprietary label as a lower-cost option for members (similar to store-brand products). App. 23. The bid process, ISP terms, and non-exclusivity described above apply to Novaplus products. *See, e.g.*, App. 17-35.[4] Again, Vizient does not manufacture, buy, sell, store, or distribute Novaplus products.[5]

## II.  Endure is a small start-up that sells medical products

Endure is a small start-up that just recently began manufacturing and distributing "medical disposable products" like "tapes" and "tourniquets." Compl. ¶¶ 23-24. Tapes and tourniquets are types of medical disposable products, and medical disposable products are one part of the "medical device market." *Id.* ¶ 24. Endure can sell to all types of healthcare providers—not just hospitals. *Id.* ¶¶ 55-56.[6] Many of its products, including tapes, "are available for purchase by general consumers" and "medical professionals." App. 60. Like any supplier, Endure can sell directly to

---

[4] Thus, while the Complaint at times refers to "Novaplus" and "Vizient-chosen supplier[s]" as distinct concepts, they are the same, and supplier contracts to sell Novaplus products are like any other supplier contract with Vizient's GPO. *See, e.g.*, Compl. ¶¶ 106-07. Endure appropriately does not allege any distinction in its claims based on the brand name of products (Novaplus or not Novaplus), and they all fail for the same reasons. *See, e.g.*, *id.* ¶¶ 8-9, 28, 110-11, 114-15, 118.

[5] Accordingly, throughout this motion where Vizient explains it does not sell supplies or compete with Endure, it pertains equally to Novaplus and non-Novaplus products.

[6] Hospital needs are the most demanding, and because Endure can meet hospital needs, it can sell to all other "non-hospital clients." *Id.* ¶¶ 55-56.

general consumers, directly to healthcare providers, or through "many" GPOs (not just Vizient). *Id.*; Compl. ¶¶ 44, 49, 55. But Endure believes it does things differently. It targets "clinic[s]" (not the hospitals at issue here), offers "volume tier discounts upfront" (like those it complains about now), and touts its online, direct-to-consumer sales platform (not indirect sales channels like GPOs). App. 48-49, 51, 53.

Endure faces stiff competition from leading manufacturers, and it has struggled to take market share from these competitors. Compl. ¶¶ 38, 50-52. No hospital purchases supplies from Endure, and none of the "many" GPOs has awarded Endure a supply contract. *Id.* ¶¶ 49, 69-70.

### III. Endure bid for a Vizient contract, lost, and then filed this lawsuit

Endure alleges it *participated* in Vizient's competitive process, but only for two of many products. In fact, Endure made it "several steps in the process toward acceptance in the tape" category but ultimately did not win, while it allegedly "applied for consideration in the tourniquet category" but was not "invit[ed]" to bid. Compl. ¶¶ 47-48, 63-64, 66.[7] Endure was not excluded from the GPO, let alone the market. It simply did not win a contract like every other supplier that bid and did not win. Endure has had this exact experience with "many" other GPOs. *Id.* ¶¶ 49, 69. But Endure sued Vizient.

While sometimes difficult to discern what claims Endure asserts, viewed most favorably to Endure, it asserts eight antitrust violations: de facto (not actual) exclusive dealing under Sherman Act § 1 and Clayton Act § 3 (Count I), predatory pricing under Sherman Act § 2 (Count II), refusal to deal under Sherman Act §§ 1 and 2 (Count III), an essential facility claim under

---

[7] This tourniquet allegation is false. Suppliers register to bid and are notified once the bid opens. App. 2-8. Endure never bid for tourniquets, and Vizient never said it could not. Even accepting this allegation as true, Endure does not allege any distinction in its claims based on product type or bid process. *See, e.g.*, Compl. ¶¶ 107-19. It fails for the same reasons as the claims related to tapes—Endure does not adequately define a relevant market, allege market and monopoly power, or allege anticompetitive conduct, including any requirement for Vizient to deal with Endure.

Sherman Act §§ 1 and 2 (Count III), and attempted monopolization under Sherman Act § 2 (Count IV). These all boil down to a similar alleged theory: Endure competed for a bid and lost, and members receive such beneficial pricing from GPO suppliers that Endure cannot compete.

## LEGAL STANDARDS

### I.  Endure must plead sufficient facts to state a plausible, not just possible, claim

Today's pleading burden derives from Supreme Court antitrust precedent. Under this precedent, Endure cannot state a claim through "labels and conclusions" or "a formulaic recitation of the elements" of an antitrust claim, and courts do not accept as true "a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If Endure only pleads "factual content" to suggest the *possibility* of a violation—rather than a "reasonable inference that the defendant is liable"—the claim must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is especially appropriate "to insist upon some *specificity* in pleading" an antitrust claim "before allowing a potentially massive factual controversy to proceed" where the costs of discovery are often "enormous." *Twombly*, 550 U.S. at 558-59.

### II.  Antitrust laws protect harm to competition, not competitors

Complaints that allege harm only to competitors must be dismissed because antitrust laws "protect the public from a failure of the market," not "a business from the workings" of it. *Geddie v. Seaton*, 2006 WL 2263335, at *5, *7 (N.D. Tex. Aug. 8, 2006). Thus, even "predatory conduct" and "act[s] of pure malice" that bring "painful losses" to a business do not state a claim "if competition is not injured." *Id.* at *7; *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 224-25 (1993).

Certain conduct not alleged here is presumptively illegal because its impact on competition is "so pernicious and devoid of redeeming virtue." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 374 (5th Cir. 2014). But other restraints can benefit consumers—like

exclusive deals and discounts alleged here. For these, courts developed the "rule of reason" to differentiate between "restraints with anticompetitive effect that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interest." *Id.* Only conduct that "*unreasonably* restrained" competition is illegal, "balanc[ing] the anticompetitive evils of a restrictive practice against any procompetitive benefits or justifications." *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 627 (5th Cir. 2002).

## ARGUMENT

### I.  Endure does not plausibly plead a relevant market

The "first step" in an antitrust case is defining the "relevant market," comprised of "relevant product and geographic markets." *Apani*, 300 F.3d at 627. This is "essential to recovery" because without a properly-defined relevant market, "there is no way to measure the anticompetitive impact on competition." *Id.*[8] To meet its pleading burden, Endure's relevant market must include all reasonably interchangeable supplies, within the area in which Endure operates and to which consumers can practicably turn. *See id.* at 626. Because Endure proffers an implausibly narrow market limited to one type of consumer without identifying specific products, its "relevant market is legally insufficient." *Id.* at 628, 632-33.

Most basically, it is entirely unclear what the proposed relevant market is, and what products comprise it. The Complaint repeatedly references a single "market" of "medical disposable products." Compl. ¶¶ 1, 3-4, 28, 40, 53, 71, 91. But then, in the section on the "relevant market," the Complaint defines it as three "markets" of "tapes," "tourniquets," and "disposable medical supplies" (not "medical disposable products"). Compl. ¶¶ 39, 121, 127. There can be no

---

[8] *Geddie*, 2006 WL 2263335, at *6 (dismissing claims for failing to plausibly allege the relevant market); *Honeywell Int'l Inc. v. MEK Chem. Corp.*, 2018 WL 6737514, at *3, *9 (N.D. Tex. July 5, 2018) (same); *Rockbit Indus. U.S.A., Inc. v. Baker Hughes, Inc.*, 802 F. Supp. 1544, 1550-51 (S.D. Tex. June 24, 1991) (same).

plausibly-pled relevant market where inconsistent definitions make it impossible to decipher what is alleged. *E.g.*, *Cinema Vill. Cinemart, Inc. v. Regal Ent. Grp.*, 2016 WL 5719790, at *6 (S.D.N.Y. Sept. 29, 2016) (dismissing where "plaintiff has defined the relevant market in an inconsistent and facially implausible way"), *aff'd*, 708 F. App'x 29 (2d Cir. 2017); *Haas Outdoors, Inc. v. Dryshod Int'l, LLC*, 2020 WL 555385, at *13 & n.8 (W.D. Tex. Feb. 4, 2020) (rejecting relevant market definition where "pleadings inconsistently define" it).[9]

Regardless, either definition fails. Whether assessing "medical disposable products" or "disposable medical supplies," neither has a clear meaning in the industry. According to Endure, there are hundreds of these products. Compl. ¶¶ 75, 103. There is no way to know what products fall within the amorphous boundaries of these vague terms, and the entire disposable products market is irrelevant here because Endure only claims to have competed for tapes and tourniquets. Compl. ¶¶ 47-48; *see PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 418 (5th Cir. 2010) (affirming dismissal and holding "women's accessories" is too broad and vague to constitute a market); *Lockheed Martin Corp. v. Boeing Co.*, 314 F. Supp. 2d 1198, 1224-29 (M.D. Fla. 2004) (relevant product market insufficient where it failed to distinguish between products sold within and outside of it).

Endure does not even define what constitutes "tapes" and "tourniquets." Endure's website indicates it sells at least 15 different types of "tapes" and *no* "tourniquets," while Vizient's contracts with tape and tourniquet suppliers cover over 130 and over 80 products, respectively. *See* App. 32-35, 43-46, 55-58. Again, one is left to guess what products fall under these generalities and whether there are reasonable substitutes. Failing to define relevant products, allege facts

---

[9] *Hass* involved an antitrust claim under Texas law the court construed in accordance with federal law. *Haas*, 2020 WL 555385, at *12 n.6. *Hass* also held the relevant market was inadequately defined because—like Vizient—the alleged violator "does not sell" goods in it. *Id.* at *13.

regarding substitutes, or distinguish among comparable ones are all grounds for dismissal. *E.g.*, *PSKS*, 615 F.3d at 418 (affirming dismissal for failure to address interchangeability); *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1338-39 (11th Cir. 2010) (same); *Queen City Pizza, Inc. v. Domino's Pizza Inc.*, 124 F.3d 430, 436-38 (3d Cir. 1997) (same); *Star Tobacco Inc. v. Darilek*, 298 F. Supp. 2d 436, 446 (E.D. Tex. 2003) (dismissing for same).[10]

Confusion aside, one thing is clear: by arbitrarily limiting the relevant market to hospitals, rather than all healthcare providers that purchase supplies, Endure's relevant market fails as a matter of law. *E.g.*, Compl. ¶¶ 1, 39. Because Endure alleges supplier exclusion, the fundamental questions are to whom Endure can sell, and whether Vizient unreasonably harmed Endure's ability to sell to them. *See Doctor's Hosp. of Jefferson, Inc. v. Se. Med. All., Inc.*, 123 F.3d 301, 311-12 (5th Cir. 1997); *Apani*, 300 F.3d at 628-29, 633. Endure concedes that it can—and does—sell to healthcare providers other than hospitals. *Supra* pp. 6-7. Yet Endure fatally alleges no facts suggesting that Vizient impacted its ability to sell to anyone in this broader relevant market other than hospitals. *Apani*, 300 F.3d at 633 (affirming dismissal of exclusive dealing claim where plaintiff did not consider all potential customers).

To get around this defect, Endure gerrymanders an artificially narrow market of only hospitals—to which it has never sold—to exaggerate the implications of the ISP on it. But the law does not permit limiting the relevant market to one type of consumer. *See id.* (affirming dismissal where the plaintiff limited the relevant market to specific consumers); *Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741, 744-46 (5th Cir. 2010) (same); *PSKS*, 615 F.3d at 418 (same); *EuroTec Vertical*

---

[10] Endure's various relevant market definitions are confounding for other reasons. Endure alleges the purchasers in its relevant market(s) are "hospitals *and hospital patients*," even though hospital patients buy from hospitals, and hospitals buy from suppliers like Endure. *E.g.*, Compl. ¶¶ 1, 39. And it alleges the market contains those who "manufacture, s[ell] *and/or* distribut[e]," making it unclear whether it alleges all or just some of those comprise the relevant market(s). *Id.* ¶ 39.

*Flight Sols., LLC. v. Safran Helicopter Engines S.A.A.*, 2019 WL 3503240, at *16 (N.D. Tex. Aug. 1, 2019) (dismissing for same).[11]

It is unsurprising, then, that courts have dismissed antitrust cases challenging GPO contracts for too narrowly defining the relevant market—as here. In *Glynn-Brunswick Hospital Authority v. Becton*, the plaintiff alleged rebate bundling and penalty provisions in sole-source GPO contracts violated antitrust laws. 159 F. Supp. 3d 1361, 1367-68 (S.D. Ga. 2016). The court held the plaintiffs erred "in narrowly defining the relevant product markets . . . to include only a subset of purchasers"—hospitals—and not "other healthcare providers, such as nursing homes, physicians' offices, and diabetes centers." *Id.* at 1379-81. The court dismissed the complaint. *Id.* at 1381; *see Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 617 (8th Cir. 2011) (affirming holding in another GPO case that the relevant market was too narrow where plaintiff challenged alleged exclusivity provisions, share discounts, and bundled discounts in GPO contracts).

Courts have similarly rejected limiting the relevant market to certain consumers in similar healthcare contexts. *E.g.*, *Little Rock Cardiology Clinic P.A. v. Baptist Health*, 591 F.3d 591, 597-98 (8th Cir. 2009) (affirming dismissal in exclusive dealing case where plaintiff limited market to certain patients); *T. Harris Young & Assocs., Inc. v. Marquette Elecs., Inc.*, 931 F.2d 816, 824-25 & n.16 (11th Cir. 1991) (affirming dismissal where plaintiff failed to show product used by certain hospitals was any different from those used by "smaller hospitals, clinics, and doctors' offices").[12]

---

[11] *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1122-23 (9th Cir. 2018) (affirming dismissal for same and citing the Fifth Circuit's decision in *PSKS*); *Chapman v. N.Y. State Div. Youth*, 546 F.3d 230, 237-38 (2d Cir. 2008) (affirming dismissal for same); *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1119 (10th Cir. 2008) (same).

[12] *Marion HealthCare, LLC v. S. Ill. Healthcare*, 2013 WL 4510168, at *10-11 (S.D. Ill. Aug. 26, 2013) (dismissing where plaintiff limited relevant market to certain patients); *Colonial Med. Grp., Inc. v. Catholic Healthcare West*, 2010 WL 2108123, at *3-4 (N.D. Cal. May 25, 2010) (same).

Endure admits it can and does sell to providers other than hospitals, conceding the implausibility of its alleged hospital-only market. *See supra* pp. 6-7.[13]

## II. Endure does not plausibly plead that Vizient had market and monopoly power

If Vizient did not play "a significant role *in the relevant market*," its alleged acts cannot harm competition as a matter of law. *Dickson v. Microsoft Corp.*, 309 F.3d 193, 207 (4th Cir. 2002) (citing *Gen. Leaseways, Inc. v. Nat'l Truck Leasing Ass'n*, 744 F.2d 588, 596 (7th Cir. 1984) (absent market power, "the inquiry is at an end; the practice is lawful")). Vital to Endure's claims are market power under Sherman Act § 1 and Clayton Act § 3, and monopoly power under Sherman Act § 2. These are the power to "control prices or exclude competition." *Stewart Glass & Mirror, Inc., v. U.S. Auto Glass Disc. Ctrs., Inc.*, 200 F.3d 307, 315 (5th Cir. 2000); *Marucci*, 751 F.3d at 374. Market share of less than 50 percent is insufficient for monopoly power. *Tristar Invs., Inc. v. Am. Tower Corp.*, 2014 WL 1327663, at *16 (N.D. Tex. Apr. 3, 2014).

Endure claims in two conclusory sentences that Vizient's GPO "controls more than 50% of all medical device sales" suppliers make "to hospitals," and "the number substantially exceeds 50%" when suppliers' sales of Novaplus products are added. Compl. ¶¶ 40, 42.[14] Endure provides no *facts*, and does not allege the specific products and geographic scope of the market share. This

---

[13] Finally, Endure alleges the relevant geographic market is the U.S., but without *any* allegation to support that the U.S. is the "area of effective competition." Compl. ¶ 38; *Apani*, 300 F.3d at 628-29 (affirming dismissal of implausible geographic market); *Honeywell*, 2018 WL 6737514, at *3 (dismissing for same). Endure does not even allege where it and GPO suppliers sell, let alone any facts that the area of effective competition is no broader or narrower than the U.S.—i.e., that Endure cannot sell internationally, or that it sells beyond the Northeast where it is based.

[14] Endure double counts the market share related to Novaplus because Vizient's GPO suppliers sell Novaplus products pursuant to Vizient's GPO contracts. *See supra* pp. 9-10. Further, while Endure tries, it cannot impute the market share of suppliers or Novaplus to Vizient because Vizient is not related to those suppliers and does not sell Novaplus products. *See, e.g., Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1214-19 (11th Cir. 2002) (holding plaintiff cannot impute defendant's share of one market to another market or the share of a distributor to a manufacturer).

District has already held that alleging "Defendants have a market share of at least 50% in the MOR Services for their engines and parts" fails where there is "no factual support" and no identification of specific products and geographic scope of the market share. *EuroTec*, 2019 WL 3503240, at *3.

Even if those bare assertions sufficed post-*Twombly*, the "control" Endure asserts—"medical devices" sold to "hospitals"—is irrelevant here. Compl. ¶ 40. Endure's broadest proposed product market includes tapes, tourniquets, and disposable products. *See supra* pp. 9-10. One's share of the "medical device" market says nothing about its share of the "medical disposable products" market. *See id.* There is also no basis—other than artificially inflating Vizient's market share—to limit the market to products sold to "hospitals" because Endure sells to other providers. *See supra* pp. 6-7. Allegations of Vizient's "control" of "medical devices" sold to "hospitals" fails to adequately plead Vizient's power in the relevant market. In fact, any market share of Vizient, even if not so limited, is not *in the relevant market* because Endure defines the "market for manufacture, sale and/or distribution" of supplies. Compl. ¶ 39. Vizient does none of those, and any market share is *outside the relevant market*. *See supra* p. 5.

At any rate, Endure's allegations show that Vizient lacked monopoly and market power because it could not "control prices or exclude competition." *Stewart*, 200 F.3d at 315; *Marucci*, 751 F.3d at 374. To start, Vizient does not sell anything—which explains why the Complaint lacks facts regarding products Vizient sells at inflated prices. *See supra* p. 5. Further, Endure explains Vizient cannot control market prices because (i) there are at least "four [other] *leading* GPOs" and "*many* smaller" ones, (ii) hospitals are members of "*at least* one GPO," (iii) suppliers can access consumers beyond GPOs, and (iv) Endure sells through these other channels. *See supra* pp. 6-7.[15]

---

[15] Because Vizient does not sell anything, one conclusory phrase that Vizient "charges inflated prices through [its] market power" cannot overcome this, especially without allegations regarding which products are sold at what prices, and how that compares to competitors. Compl. ¶ 125.

Because there is "a significant number of viable competitors," power is lacking. *Ryko Mfg. Co. v. Eden Servs.*, 823 F.2d 1215, 1232 (8th Cir. 1987); *see Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 98-99 (2d Cir. 1998) (no monopoly power despite 72% market share).

Finally, market share of less than 50 percent is insufficient for monopoly power. Endure claims that only 80% of Vizient's member hospitals participate in the ISP—the alleged illegal practice. Compl. ¶ 80. Multiplying 80% participation in the ISP by the only concrete market share alleged in the Complaint—50%—reveals Vizient's *relevant* market share is only 40% and, thus, legally deficient as a matter of law. *Id.* ¶ 40; *Am. Airlines, Inc. v. Travelport Ltd.*, 2011 WL 13047291, at *6 (N.D. Tex. Nov. 21, 2011) (dismissing Section 2 claim for pleading market share below 50%) (subsequent history omitted); *Tristar*, 2014 WL 1327663, at *16 (holding market share below 50% is insufficient as a matter of law).[16]

## III.  Endure does not plausibly plead anticompetitive conduct

Even if Endure plausibly pled a relevant market and the requisite power therein, it does not adequately allege anticompetitive conduct by Vizient required to sustain an antitrust claim.

### A.  Endure does not plausibly plead GPO suppliers have exclusive deals (Count I)

To plead a Section 1 claim, Endure must adequately allege (1) Vizient engaged in concerted action, (2) that unreasonably restrained trade (i.e., competition), (3) in the relevant market in which Vizient had market power. *See* 15 U.S.C. § 1; *Apani*, 300 F.3d at 627. Here, Endure asserts an exclusive dealing claim, Compl. ¶¶ 136-144, which requires pleading that GPO members can *only*

---

[16] The Complaint effectively concedes this elsewhere when alleging market foreclosure from Vizient's market share only "exceeded 40%"—not 50%. Compl. ¶¶ 109, 113, 117. Further, Vizient's total relevant market share must be 62% for its relevant ISP share to reach 50%. Endure merely claims that Vizient's total share is "more than 50%," leaving the Court to *guess* whether— not *infer* that—it reaches the 62% threshold to plead monopoly power as a matter of law.

purchase from GPO suppliers, *Apani*, 300 F.3d at 625.[17] These GPO arrangements, however, provide "well-recognized economic benefits" to competition and consumers. *See Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 996 (9th Cir. 2010); *Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394, 403 (3d Cir. 2016). As a result, they are only anticompetitive if they "foreclose[] competition" in a "substantial share of the relevant market." *Apani*, 300 F.3d at 625. Endure fails to plausibly plead both exclusivity and substantial foreclosure.

To start, the Complaint pleads no facts regarding any specific agreement—not by date, parties, products, terms, or anything else—between a Defendant and anyone else to exclude Endure from the relevant market. It also does not provide specific volume discounts or exclusivity requirements for any product in the relevant market that excluded Endure. It just alleges GPO contracts can have such terms—reaffirming this is a broad attack on GPOs generally, rather than Vizient specifically, or any contract particularly. *E.g.*, Compl. ¶¶ 106-07, 111, 115. This fails to state a claim against Vizient for any specific anticompetitive act. *Twombly*, 550 U.S. at 554-55.

Unsurprisingly, Endure has pled nothing more than unilateral action. But "Section 1 does not reach conduct that is wholly unilateral"—it requires "concerted conduct" to achieve an unlawful end. *Honeywell*, 2018 WL 6737514, at *5; *see Johnson v. Hosp. Corp. of Am.*, 95 F.3d 383, 392 (5th Cir. 1996). With no allegation that Defendants conspired to rig the bidding process or enter supply contracts for its members with the purpose of excluding Endure, Endure merely alleges that Vizient *unilaterally* accepted a better bid and negotiated the best prices it could for its members. Compl. ¶¶ 47, 64, 106-07, 111, 115; *see Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (a company's incentive arrangements with high-volume buyers

---

[17] Count I also cites Clayton Act § 3, 15 U.S.C. § 14, but the analysis under Sherman Act § 1 and Clayton Act § 3 is the same. *Apani*, 300 F.3d at 625-26.

was unilateral conduct); *Branta, LLC v. Newfield Prod. Co.*, 310 F. Supp. 3d 1166, 1207 (D. Colo. 2018) ("Without . . . an agreement to rig bids," defendant's conduct was "[s]olely unilateral.").[18] Endure's Section 1 claim must be dismissed. *Honeywell*, 2018 WL 6737514, at *7 (dismissing Section 1 claim that "relate[d] to unilateral conduct"); *Cedra Pharmacy Hous., LLC v. UnitedHealth Grp., Inc.*, 2019 WL 1433600, at *9 (S.D. Tex. Mar. 7, 2019) (dismissing "for failure to state a plausible agreement or conspiracy between the Defendants" to harm plaintiff) (subsequent history omitted); *cf. Se. Mo. Hosp. v. C.R. Bard, Inc.*, 2008 WL 199567, at *6 (E.D. Mo. Jan. 22, 2008) (dismissing for failure to plausibly plead contracts between GPOs and manufacturers were the result of a conspiracy).

Next, Endure concedes the supplier agreements are not exclusive, but rather "de facto" require members to purchase solely from GPO suppliers. Compl. ¶ 107. Endure alleges, however, that hospitals are members of "*at least* one GPO," members in the ISP commit to a "potential" purchase amount, and members do not receive rebates in the ISP if they purchase from *other suppliers*. Compl. ¶¶ 10, 33, 84, 106-07.[19] None of that could be true if there were exclusivity. And there is none. Vizient's members can buy Endure's products at any time. *See supra* pp. 5-6.

Endure's complaints about vague volume-based, share-based, or bundled discounts unattributed to any specific contract—let alone one in the relevant market—fare no better, particularly where Endure provides the very "volume tier discounts" it challenges here. *E.g.*, Compl. ¶¶ 10, 71, 74, 84, 104, 106-07; *supra* p. 7. Endure merely alleges other suppliers' prices

---

[18] Further, Defendants are related corporate entities, Compl. ¶¶ 13-17, which cannot conspire as a matter of law. *E.g.*, *Cedra*, 2019 WL 1433600, at *10 (citing *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984)).

[19] Endure likewise admits there is no exclusivity because there can be *more than one* supplier for each product. Compl. ¶¶ 8, 28, 50, 77, 106; *see* App. 14, 29, 40, each at ¶ 11(A); App. 20 ¶ 12.

are so attractive it cannot compete, *id.*,[20] but that is exactly why discounts are procompetitive and "a boon to consumers." *Brooke Grp. Ltd.*, 509 U.S. at 224.[21] Indeed, appellate courts have held that discounts in GPO contracts identical to the ones alleged here are not exclusive dealings because hospitals are not required to purchase anything, and if they purchase less than the volume targets, they simply do not get the discount. *Se. Mo. Hosp.*, 642 F.3d at 612-13; *Allied*, 592 F.3d at 997. So too here. *See supra* p. 5.

Most importantly, Endure fails to adequately plead it was "foreclosed" from a "substantial" portion of the "relevant market." *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327-29 (1961); *Apani*, 300 F.3d at 625. Sometimes Endure claims GPO contracts excluded it from *all hospitals*, even though Endure alleges 50% of hospitals are not Vizient members. *E.g.*, Compl. ¶¶ 28, 40, 80. Other times Endure inconsistently alleges those contracts excluded it from *40% of hospitals* and "associated consumers," even though those "associated consumers" are neither part of Vizient's GPO nor included in Endure's relevant market definition. *Id.* ¶¶ 108-09, 112-13, 116-17. These conflicting and implausible allegations—aggregating all GPO contracts and containing *no* factual support—do not adequately plead Endure was substantially foreclosed from the relevant market. *Dillon Materials Handling, Inc. v. Albion Indus.*, 567 F.2d 1299, 1305 n.19 (5th Cir. 1978) (holding market share alone is insufficient absent "breadth of exclusive dealing"); *Am. Airlines, Inc. v. Travelport Ltd.*, 2012 WL 12507645, at *2 (N.D. Tex. Feb. 28, 2012) (dismissing Section 1 claim where plaintiff alleged foreclosure from "several discrete" agreements "in the aggregate").

---

[20] Endure inconsistently alleges *discounts* forced members to purchase from Vizient's GPO suppliers while claiming suppliers charged "*elevated prices*." Compl. ¶¶ 7-9, 32, 78, 97, 125; *Geddie*, 2006 WL 2263335, at *6 (dismissing "[d]ue to the blatant inconsistency in pleadings").

[21] Endure really asserts a predatory pricing claim here, because it alleges it cannot compete due to price, not that it does not have the opportunity to compete. *Eisai*, 821 F.3d at 408-09. As explained later, Endure fails to adequately plead a claim for predatory pricing. *See infra* pp. 20-22.

Courts across the nation have repeatedly held that GPO contracts like the ones here do not foreclose a substantial portion of the relevant market. As the Ninth Circuit explained in so holding:

> The GPO's "market-share discount and sole-source agreements . . . did not contractually obligate Tyco's customers to purchase anything . . . Rather, the agreements provided only for substantial discounts to customers that actually purchased a high percentage . . . ." Members "could choose at anytime to forego the discount offered by Tyco and purchase from" competitors, which "remained able to compete for Tyco's customers by offering their products at better prices."

*Allied*, 592 F.3d at 996-98. The Third Circuit likewise held that share-based, volume-based, and bundled discounts in GPO contracts did not foreclose a non-GPO supplier from hospital business because hospitals that missed volume thresholds simply did not receive discounts, and those hospitals could switch to competing products but simply chose not to. *Eisai*, 821 F.3d at 403-08. The Eighth Circuit did too. *Se. Mo. Hosp.*, 642 F.3d at 616 (holding a hospital that purchases from a GPO supplier is not foreclosed to a non-GPO supplier).[22]

Exactly like these cases from the Third, Eighth, and Ninth Circuits, Vizient's members do not have to purchase anything from GPO suppliers, if they do not hit volume thresholds they simply do not get additional rebates, and they can buy directly from Endure at any time. *See supra* p. 5. Endure wrongly considers hospitals "foreclosed" based on the products they "ultimately choose[] to buy," rather than those "reasonably available" to them when they decide. *Se. Mo. Hosp.*, 642 F.3d at 616. Because Endure has the same opportunity to compete as GPO suppliers,

---

[22] While it does not appear the Fifth Circuit has analyzed antitrust claims against GPOs, it held the exclusion of a hospital from a preferred provider organization ("PPO") did not harm competition. Like the GPO context here, the excluded hospital could join other PPOs, and consumers could use those other PPOs or visit the hospital outside of a PPO. *Doctor's Hosp. of Jefferson*, 123 F.3d at 302, 308-09; *cf. Omega Env't Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1163 (9th Cir. 1997) (finding no foreclosure where "[c]ompetitors are free to sell directly, to develop alternative distributors, or to compete for the services of the existing distributors"); *Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555, 1572-73 (11th Cir. 1991) (finding no anticompetitive impact where plaintiffs were not foreclosed from every alternative).

Endure's lack of success does not make GPO contracts illegal. Compl. ¶¶ 49, 69-70, 130. And, in any event, Endure's claims ring hollow—alleging GPOs foreclose it from the market while touting its direct-to-consumer model and innovative online sales platform, and complaining about hospital access while actually targeting clinics. *See supra* p. 5.

### B.  Endure does not plausibly plead Vizient sells at predatory prices (Count II)

Endure's predatory pricing claim under Section 2 is even weaker. Compl. ¶¶ 145-50.[23] For a violation of Section 2, a defendant must (1) possess monopoly power in the relevant market and (2) willfully acquire or maintain that power through anticompetitive conduct—here, predatory pricing—rather than a superior business acumen. 15 U.S.C. § 2; *Geddie*, 2006 WL 2263335, at *7; *Honeywell*, 2018 WL 6737514, at *1. To plausibly allege unlawful predatory pricing, Endure must plead that (1) Vizient's prices are below an appropriate measure of its costs, and (2) Vizient has a dangerous probability of recouping its losses from below-cost prices by driving out competitors and then raising prices to artificial heights. *Brooke Grp.*, 509 U.S. at 222. The "Supreme Court has expressed extreme skepticism of predatory pricing claims," and the Fifth Circuit has held that "the standard for inferring an impermissible predatory pricing scheme is high." *Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 477-78 (5th Cir. 2000).

First, this claim makes little sense because Vizient does not sell supplies. Vizient thus cannot sell below cost and later raise prices. *See supra* p. 6. For the same reason, Endure is not Vizient's competitor, but predatory pricing is anticompetitive only because it "driv[es] a *competitor* out of the market." *Clean Water Opportunities, Inc. v. Willamette Valley Co.*, 759 F.

---

[23] While Count II's header states "exclusive dealing," Compl. at 26, the case to which it cites and the elements it recites relate to predatory pricing. *See Brooke Grp.*, 509 U.S. 209. Regardless, exclusive dealing is addressed in Count I.

App'x 244, 246 (5th Cir. 2019); *see Felder's Collision Parts, Inc. v. All Star Advert. Agency, Inc.*, 777 F.3d 756, 759-60 (5th Cir. 2015) (collecting cases). This claim is misguided.

Second, after scouring the Complaint, not just Count II, Defendants have found no allegation—not even a conclusory one—of recouping below-cost pricing. *See* Compl. Because Endure must "allege facts corresponding to [each of the] elements" of an antitrust claim, this claim must be dismissed. *Oxford Glob. Res., Inc. v. Weekley-Cessnun*, 2004 WL 2599898, at *2, *4 (N.D. Tex. Nov. 12, 2004); *Geddie*, 2006 WL 2263335, at *5. And repleading will not fix this. Vizient does not sell supplies and thus cannot recoup losses from below-cost pricing by raising prices later. *See Brooke Grp.*, 509 U.S. at 222. Endure also cannot adequately allege this unspecified pricing "could actually drive the competitor out of the market . . . without drawing new entrants," given Endure is an example of a new entrant (Compl. ¶¶ 23-24), and courts have rejected these claims where plaintiffs allege low pricing on only some of a competitors' many products—like only tapes and tourniquets (*id.* ¶¶ 56, 110, 114, 118). *Taylor*, 216 F.3d at 478-79 (holding "minimal below-cost pricing" cannot sustain a claim) (collecting cases).

Third, Endure's formulaic recitation of the below-cost element fails. Endure simply states that if all "discounts" from *different* suppliers are "attributed" to the price of tapes, tourniquets, and medical disposable products, "the resulting price . . . would be below . . . cost." Compl. ¶¶ 110, 114, 118.[24] Endure alleges nothing more. It does not allege actual discounts, prices, profit margins, or costs. *See, e.g.*, *Varentec, Inc. v. Gridco, Inc.*, 2017 WL 2438846, at *5 (D. Del. June

---

[24] Endure's bare assertion has other flaws. It (i) repeatedly conflates Vizient with its suppliers when attributing discounts to costs, considering Vizient does not sell anything and thus provides no discounts and has no product costs; (ii) impossibly claims *penalties* on members make prices members pay *below cost*; (iii) double counts discounts on Novaplus products and those given by suppliers, considering suppliers (not Vizient) sell Novaplus products; and (iv) wrongly attributes discounts on Novaplus products to non-Novaplus products. Compl. ¶¶ 110, 114, 118.

6, 2017) (stating it is "impossible to plausibly conclude that th[e] alleged discounts resulted in below-cost pricing" without "actual costs" or "industry standard cost[s]"); *TI Inv. Servs., LLC v. Microsoft Corp.*, 23 F. Supp. 3d 451, 465 (D.N.J. 2014) (dismissing because plaintiff did not specify the defendant's price structure, profit margin, or cost). This is not surprising. The Complaint frequently claims the opposite of predatory pricing: (i) GPO contracts had "elevated," "dramatically increase[d]," and "inflated" prices, (ii) Endure's prices are lower than GPO suppliers' prices, and (iii) Vizient's bid process ignores price. Compl. ¶¶ 7-9, 27, 32, 73, 78, 87, 90, 97, 125. This is another inconsistent theory that must be dismissed.

### C.  Endure does not plausibly plead Vizient refused to deal with it (Count III)

Having lost to a supplier that submitted a more attractive bid, Endure attempts to plead a refusal to deal claim under a classic theory and the discredited "essential facility" one. Compl. ¶¶ 151-160. Vizient had no duty to deal with Endure, but still did. The claim must be dismissed.

#### 1)  Endure pleads no exception creating a duty to deal with Endure

Endure fails to plead a classic refusal to deal claim: that an exception to the rule required Vizient to deal with Endure, and Vizient refused Endure's demand to deal. *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448, 450 (2009).

At the outset, Endure's Section 1 claim fails as a matter of law because Endure has pled nothing more than unilateral action. *See supra* pp. 16-17. There is another fundamental problem under Sections 1 and 2. Vizient "has a right to deal, or *refuse to deal*, with whomever it likes." *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 843 (5th Cir. 2015). Because Endure does not allege an "exception" created an otherwise nonexistent antitrust duty to deal, *see* Compl., this claim fails. *Pac. Bell Tel.*, 555 U.S. at 450 (holding refusal to deal claims are "not cognizable . . . in the absence of an antitrust duty to deal"); *Lloyd's Material Supply Co., Inc. v. Regal Beloit*

*Corp.*, 2017 WL 5172206, at *7 (C.D. Cal. June 27, 2017) ("Absent . . . a recognizable refusal-to-deal exception, Plaintiffs have not pleaded a . . . claim.").

And Endure cannot plead an exception. The only recognized one is terminating a "voluntary" prior "course of dealing . . . to achieve an anticompetitive end." *Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 409 (2004); *see In re Adderall XR Antitrust Litig.*, 754 F.3d 128, 134 (2d Cir. 2014) (holding this is the "sole exception"). But Endure concedes it never had any deal with Vizient, and there was nothing for Vizient to terminate. *E.g.*, Compl. ¶¶ 47, 64, 68; *see Trinko*, 540 U.S. at 409 (affirming dismissal where the "refusal to deal alleged" did "not fit within [this] exception"); *ASAP Paging Inc. v. CenturyTel of San Marcos Inc.*, 137 F. App'x 694, 699 n.5 (5th Cir. 2005) (same because no alleged "previous voluntary practice").

### 2)   Endure concedes Vizient's GPO is not essential to Endure and the market

Endure also appears to assert its refusal to deal claim under an "essential facilities" theory. Compl. ¶¶ 154-159. This theory should be "jettisoned" as it is "one of the most troublesome, incoherent and unmanageable of bases for [antitrust] liability." *Dealer Comput. Servs., Inc. v. Ford Motor Co.*, 2006 WL 801033, at *2 (S.D. Tex. Mar. 28, 2006), *aff'd*, 190 F. App'x 396 (5th Cir. 2006). The Supreme Court stated it has "never recognized such a doctrine." *Trinko*, 540 U.S. at 410-11. Accordingly, neither the Fifth Circuit nor this District have addressed its elements: (1) Vizient is a monopolist, (2) Vizient's GPO is essential, (3) Vizient has the type of control over the GPO that the Sherman Act forbids, (4) duplicating a GPO is unreasonable or impractical, (5) Vizient denied Endure use of the GPO, and (6) providing access to Endure was feasible. *Dealer*, 2006 WL 801033, at *2 & n.1 (stating no court in the Southern District has found a viable claim).

To the extent this theory is even recognized, the Section 1 claim can be summarily dismissed. There is no allegation that Vizient conspired with anyone to exclude Endure from the

GPO, which Section 1 requires. *See supra* pp. 16-17.[25] The Section 2 claim fails quickly too. The Complaint provides nothing more than a formulaic recitation of only *some* of the elements of the claim. *Compare supra* p. 23, *with* Compl. ¶¶ 154-159; *Twombly*, 550 U.S. at 555.

More importantly, no repleading can fix these claims. First, Endure concedes Vizient's GPO was not "essential"—or "vital to both [Endure's] competitive viability and the viability of the market," with "no feasible alternative." *David*, 995 F. Supp. at 752-53; *Kochert v. Greater Lafayette Health Servs., Inc.*, 372 F. Supp. 2d 509, 519 (N.D. Ind. 2004), *aff'd*, 463 F.3d 710 (7th Cir. 2006). Endure describes the plethora of alternatives available, including at least "four [other] *leading* GPOs," and "*many* smaller" ones. Compl. ¶¶ 29-37, 40, 49, 69. Endure also admits it can and does sell through non-GPO channels. *See supra* pp. 6-7. Endure and the market have alternatives, and that defeats this claim. *See Kerwin v. Casino*, 802 F. App'x 723, 725 (3d Cir. 2020) (affirming dismissal where "allegations demonstrated . . . access to alternative venues").

Second, an "indispensable requirement" of this claim is "unavailability of access" to Vizient's GPO—"where access exists, the doctrine serves no purpose." *Trinko*, 540 U.S. at 411. Here, Endure had access. *See supra* pp. 7-8. In fact, Endure made it "*several steps in the process toward acceptance.*" Compl. ¶ 64. Access is different than winning. Access dooms these claims. *Trinko*, 540 U.S. at 411.

## IV. Endure does not plausibly plead Vizient attempted to monopolize (Count IV)

Endure pleads no facts to support that Vizient (1) engaged in anticompetitive conduct, (2) with a specific intent to monopolize, and (3) had a dangerous probability of obtaining monopoly power in the relevant market. 15 U.S.C. § 2; *Oxford*, 2004 WL 2599898, at *2. Instead, Endure

---

[25] In fact, it is far from clear one can bring an essential facility claim under Section 1. *See David L. Aldridge Co. v. Microsoft Corp.*, 995 F. Supp. 728, 751-52 (S.D. Tex. 1998) (requiring Section 2 monopoly power); *City of Coll. Station v. City of Bryan*, 932 F. Supp. 877, 887 (S.D. Tex. 1996) (same); *TCA Bldg. Co. v. Nw. Res. Co.*, 873 F. Supp. 29, 39 (S.D. Tex. 1995) (same).

merely parrots these elements, asserting—without more—that "Vizient engaged in an overt act of anticompetitive conduct," with "a specific intent to monopolize," and "had a dangerous probability of achieving monopoly power." Compl. ¶¶ 162-64. Such a "formulaic recitation" of the elements, and the failure to "allege facts corresponding to [each of the] elements" of an antitrust claim, requires dismissal. *Twombly*, 550 U.S. at 545; *Oxford*, 2004 WL 2599898, at *2, *4; *Geddie*, 2006 WL 2263335, at *5.[26]

Even straining to find support, the claim still fails. Endure pleads absolutely *no* factual support for any intent to monopolize by Vizient. *See* Compl. Endure also does not even attempt to allege Vizient's dangerous probability of achieving monopoly power *in the relevant market by excluding Endure*. *See* Compl. ¶¶ 40, 42, 164. Instead, Endure concedes there are at least "four [other] leading" GPOs and "many" others that compete with Vizient, and preventing a supplier like Endure from obtaining a GPO contract does *not* enhance the GPO's market share. *See supra* pp. 6-7. These gaping holes in Endure's claim require dismissal. *See Mary Kay Inc. v. Reibel*, 2018 WL 2984865, at *5 (N.D. Tex. June 14, 2018) (dismissing for failing to adequately plead intent and dangerous probability); *Oxford*, 2004 WL 2599898, at *3 (same for dangerous probability).

## CONCLUSION

Endure does not plausibly plead a single element of an antitrust claim—a relevant market, power to control prices, or anticompetitive conduct. It cannot. Vizient members can purchase from Endure at any time, and Endure can compete like any other supplier. Antitrust laws protect competition—like a competitive GPO marketplace—not competitors—like Endure, who competed and simply lost. The Court should dismiss the Complaint with prejudice.

---

[26] Endure's undifferentiated allegations of attempted monopolization against all Defendants fail. *See supra* n.1; *Geddie*, 2006 WL 2263335, at *7 (dismissing where plaintiff alleged "all Defendants" attempted to monopolize without facts to support the claim against each).

Dated: December 14, 2020

Respectfully Submitted,

*/s/ Ronald W. Breaux*
Ronald W. Breaux
Texas Bar No. 02937200
Benjamin G. Goodman
Texas Bar No. 24091433
**HAYNES AND BOONE, LLP**
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
214.651.5000 (phone)
214.651.5940 (fax)
ron.breaux@haynesboone.com
benjamin.goodman@haynesboone.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2020, the foregoing document was served on all counsel of record via the Court's electronic filing system.

*/s/ Ronald W. Breaux*
Ronald W. Breaux