UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ENDURE INDUSTRIES INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-CV-3190-X |
| | § | |
| VIZIENT INC., et al., | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION FOR SUMMARY JUDGMENT**

Before the Court is defendants Provista Inc., Vizient Inc., and Vizient Source LLC, and Vizient Supply LLC's (collectively, "Vizient") motion for summary judgment against plaintiff Endure Industries Inc. (Endure). (Doc. 235). In addition, Vizient moves to exclude the testimony of three of Endure's experts: Loren K. Smith (Doc. 238) and John Strong and Gary Durham (Doc. 240). In return, Endure moves to exclude the testimony of Vizient's expert, Michael Fahlman (Doc. 245). For the reasons below, the Court **GRANTS** Vizient's motion for summary judgment and **FINDS AS MOOT** all motions to exclude.

## I.   Factual Background

Endure sells disposable medical supplies (DMS) and brought this case against Vizient, a healthcare group purchasing organization (GPO) after losing bids to

1

contract with Vizient.  Endure alleges Vizient has violated the Sherman Antitrust Act by monopolizing the market and engaging in anticompetitive conduct.

As a GPO, Vizient negotiates sales terms with product suppliers on behalf of healthcare providers—such as hospitals, surgery centers, nursing homes, physician offices, jails, and schools—that are members of its network.  Members can purchase products through Vizient at the price Vizient negotiates with certain suppliers, through other GPOs with their negotiated prices, or from non-GPO suppliers independently.

Vizient also has various Impact Standardization Programs (Impact Programs) through which some suppliers offer quarterly rebates to members who purchase a certain volume of particular supplies included in the program.  When members join an Impact Program, they make an annual spend projection in each product category the Impact Program covers, such as nonsterile kits or bowel management.  To be eligible for the rebates, members must purchase at least 75% of their total projected spend.  Then, if the member purchases 90% of its projected spend in a particular category from a specific supplier, the member receives a rebate from that supplier. Members who do not purchase enough to receive the rebate can still purchase supplies at the Vizient-negotiated rate.

The DMS suppliers in Vizient's network sell products like medical tape, syringes, tourniquets, monitoring electrodes, and masks.  Endure defines DMS as "the least technically complex subset of all devices sold in the medical supply market,"

with a "high degree of interchangeability."[1]  Suppliers bid to negotiate contracts with Vizient so they can offer their products to Vizient's members through the GPO.  In evaluating these bids, Vizient considers both financial and non-financial factors, including clinical quality and acceptability and member preference.

Endure submitted bids to become a supplier in Vizient's network for medical tape and tourniquets, but it did not win.  Endure now brings antitrust claims under Sections 1 and 2 of the Sherman Antitrust Act against Vizient for monopolization and anticompetitive conduct.

## II.   Legal Standards

Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]  So to defeat a motion for summary judgment, the non-movant must "identify specific evidence in the record and articulate the precise manner in which that evidence supports his claim."[3]  In ruling on summary judgment, the court views all facts in a light most favorable to the nonmovant—here, Endure—and resolves all factual disputes in its favor.[4]  "A fact is material if it might affect the outcome of the

---

[1] Doc. 100 ¶ 23.

[2] FED. R. CIV. P. 56(a).

[3] *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (cleaned up).

[4] *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988).

3

suit," and a "factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5]

### III. Analysis

Vizient asks the Court for summary judgment because (1) Endure's proposed antitrust markets are legally insufficient; (2) Vizient is not actually a competitor in the markets Endure proposes; and (3) Endure's theories of Vizient's anti-competitive conduct fail as a matter of law. Because Endure fails to survive summary judgment on Vizient's first reason, the Court does not consider Vizient's two additional arguments.

### A. Relevant Markets

To bring a successful claim under the Sherman Act, Endure must first define the relevant market within which it claims Vizient has engaged in anticompetitive behavior or monopolized.[6] Where a plaintiff fails to define a sufficient relevant market, the Court may grant summary judgment on antitrust claims.[7] "Without a definition of the market there is no way to measure the defendant's ability to lessen or destroy competition,"[8] which is the ultimate question in an antitrust case.

Endure proposes two alternative relevant markets through its expert, Loren K. Smith. Smith calls the first the "GPO DMS Market," which encompasses "the sale of DMS through GPO-negotiated and administered contracts to [General Acute Care

---

[5] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (cleaned up).

[6] *Shah*, 985 F.3d at 453–54.

[7] *See id.*; *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 628 (5th Cir. 2002).

[8] *Ohio v. Am. Express Co.*, 585 U.S. 529, 543 (2018) (cleaned up).

4

(GAC)] hospitals."[9] The second he calls the "Vizient DMS Market," which includes the sale of DMS only to those GAC hospitals that are Vizient members.[10] Neither market is legally sufficient.

Whether a relevant market has been properly identified "is usually a question of fact; however, in some circumstances, the issue may be determined as a matter of law."[11] To survive summary judgment, the defined relevant market "must include all commodities reasonably interchangeable by consumers for the same purposes."[12] And it is defined by "the area of effective competition in which the seller operates, and to which the purchaser can practicably turn for supplies."[13]

Submarkets can exist within broader product markets as their own sufficient markets for antitrust purposes. The boundaries of these "well-defined submarkets" can be determined through practical considerations like industry or public recognition of their separate economic nature, sensitivity to price changes, and unique product characteristics, customers, uses, prices, or vendors.[14] These are called the *Brown Shoe* factors. However, the Fifth Circuit has stated the presence of one or

---

[9] Doc. 239 at App. 7.

[10] *Id.*

[11] *Apani Sw., Inc.*, 300 F.3d at 628.

[12] *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010) (quoting *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956)). Some courts refer to this as the "rule of reasonable interchangeability and the cross-elasticity of demand." *Apani Sw., Inc.*, 300 F.3d at 628.

[13] *Shah*, 985 F.3d at 454 (cleaned up).

[14] *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962).

5

more of these factors will not necessarily protect against summary judgment on whether a relevant market has been established.[15]

### 1. GPO DMS Market

Of Endure's two proposed markets, the Court turns first to the GPO DMS Market. According to Smith, Endure does not compete in this market. Rather, Vizient competes with other national and regional GPOs. On its part, Vizient argues that it does not compete in the market as it is defined either, since it does not "sell" DMS.[16] But even assuming, *arguendo*, that Endure does compete in this market, the definition artificially limits the product market to a particular method of sale when customers can (and do) purchase DMS outside GPOs.

As explained above, a legally sufficient relevant market for antitrust claims must encompass "the area of effective competition" and include all reasonably interchangeable substitutes for the product[17]—here, DMS sales. Smith's GPO DMS Market excludes all non-GPO DMS sales, even though his report states that 174 of the 629 GAC hospitals that have left Vizient over the years left the GPO model entirely.[18] So Endure does not dispute that over a quarter of the GAC hospitals that

---

[15] *C.E. Servs., Inc. v. Control Data Corp.*, 759 F.2d 1241, 1246 (5th Cir. 1985).

[16] Doc. 238 at 7. In its response to Vizient's motion to strike Loren K. Smith's expert testimony, Endure clarifies the "GPO DMS Market is the market for the sale (by **suppliers**) of disposable medical supplies ('DMS') **through** GPO-negotiated and administered contracts." Doc. 252 at 4 (emphasis in original). This seems to support Vizient's position that Vizient itself does not even compete in this market.

[17] *Shah*, 985 F.3d at 454 (quoting *Am. Express Co.*, 585 U.S. at 543 (2018)) (affirming summary judgment against antitrust claims for failure to establish a relevant market encompassing all "interchangeable substitute[s]").

[18] Doc. 239, App. 21.

have discontinued membership with Vizient presumably substituted Vizient's GPO contracts for other channels to purchase DMS, but it does not include these channels as reasonably interchangeable substitutes.

Instead, Endure argues GPO contracts are a submarket under the *Brown Shoe* factors. Endure tries to argue suppliers transacting through GPO-negotiated contracts are "specialized vendors."[19] In a similar case brought by a medical supplier, the Eighth Circuit rejected this very argument, stating "GPOs are not specialized vendors; the vendors are the same whether sales are GPO or non-GPO."[20] Further, the "Supreme Court has repeatedly said that for identical items, a price differential alone does not establish two separate product markets."[21] And Endure itself noted that DMS are highly interchangeable.[22]

It may be true that GAC hospitals have a "unique demand for a large volume of a broad array of DMS products" that makes GPOs an efficient option.[23] But by Vizient's own report, 98% of hospitals are members of a GPO, yet only 72% of all purchases by U.S. hospitals were through GPO contracts.[24] That means, even though most all hospitals are members of GPOs, almost 30% of their purchases are outside GPOs. And the Fifth Circuit has called 30% of patients being left of out a proposed

---

[19] Doc. 255 at 26 (citing *Brown Shoe Co.*, 370 U.S. at 325).

[20] *Se. Mo. Hosp. v. C.R. Bard. Inc.*, 642 F.3d 608, 614–15 (8th Cir. 2011).

[21] *Id.* at 615 (citing *Brown Shoe Co.*, 370 U.S. at 326; *United States v. Cont'l Can Co.*, 378 U.S. 441, 455 (1964)).

[22] Doc. 100 ¶ 23.

[23] Doc. 255 at 26.

[24] *Id.* at 28 n. 167.

7

market a "substantial percentage" and "powerful evidence of the alternatives reasonably available to consumers."[25]

Once again, Vizient fails to address all reasonably interchangeable substitutes and as a result, this proposed market fails as a matter of law.

### 2. Vizient DMS Market

Next, the Court examines Endure's proposed Vizient DMS Market, which includes only those GAC hospitals that are Vizient members. Endure proposes this as a submarket to the GPO DMS Market.[26] However, "absent strong evidence on the issue, a single brand within a product class is presumptively not a separate market."[27] Single-brand markets are only proper where "consumers are 'locked-in' to a specific brand by the nature of the product."[28] This lock-in effect describes situations where consumers are effectively at the mercy of one brand's pricing, like in *Eastman Kodak Co. v. Image Technical Services*, in which a photocopier manufacturer would only sell its proprietary replacement parts (at above-market prices) to customers who used the company's repair services and restricted the manufacturer from selling parts to any other independent repair service.[29] There's a good reason that we only use this myopic submarket for sellers who lock in buyers. If the lock-in constraint weren't there, then we could define the market for, say, fast-

---

[25] *Dr.'s Hosp. of Jefferson v. Se. Med. All., Inc.*, 123 F.3d 301, 312 (5th Cir. 1997).

[26] Doc. 100 ¶ 73.

[27] *O'Dell v. GMC*, 122 F. Supp. 2d 721, 734 (E.D. Tex. 2000) (citing *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 488 (5th Cir. 1984) (holding that "absent exceptional market conditions, one brand in a market of competing brands cannot constitute a relevant product market")).

[28] *PSKS, Inc. v. Leegin Creative Leather Prods.*, 615 F.3d 412, 418 (5th Cir. 2010).

[29] 504 U.S. 451, 455–58 (1992).

food burgers in Texas by standing outside only Whataburger and asking patrons where they buy burgers. The answer would be 100% Whataburger. So too at every burger joint. Such a truism only states that a business serves customers, not that it cornered the market.

Though Endure uses the phrase "locked in" in its Second Amended Complaint,[30] none of its factual allegations suggest such a scheme from Vizient. Instead, Endure claims members have "little or no incentive" to leave Vizient because they would miss out on the Impact Program's loyalty rebates.[31] Offering customers incentives to keep them from leaving does not lock them in. By that logic, employee bonuses violate the Thirteenth Amendment. Or Whataburger violates the Sherman Act by serving 100% of its customers and having a loyalty program. Likewise, the internal costs a customer faces when changing suppliers or purchasing procedures do not lock them in either.

Endure makes much of Vizient's rebate program, but no allegations suggest its members are prevented from buying the supplies they need outside the GPO, joining and purchasing through additional GPOs, or leaving the GPO altogether. As noted above, 629 hospitals have left Vizient over the course of its time as a GPO. Vizient is

---

[30] Doc. 100 ¶ 36. Vizient supports this assertion by citing "the enormous cost a Member Hospital would face attempting to switch from Vizient to another GPO or to purchasing directly from suppliers" and the loss of "significant loyalty rebates." *Id.* Endure does not clarify why leaving Vizient would entail enormous cost.

[31] *Id.*

hardly Hotel California. Rebates don't lock in the hospitals that purchase through Vizient, so the submarket of hospitals that work through Vizient fails.

The final nail in the coffin for this proposed market is that, even among Vizient's own GAC hospital members, 30% of DMS purchases are made outside Vizient's negotiated contracts, according to Smith's report.[32] As discussed for the GPO DMS Market above, missing 30% of the activity is strong evidence to the Fifth Circuit that the proposed market does not encompass all reasonably interchangeable substitutes. For this reason and those explained above, the Vizient DMS Market fails as a matter of law.

## IV. Conclusion

The Court **GRANTS** Vizient's motion for summary judgment because Endure has failed to establish a legally acceptable definition of the relevant market. The Court **FINDS AS MOOT** Endure's motions to exclude the testimony of Loren K. Smith, John Strong, and Gary Durham, and Vizient's motion to exclude the testimony of Michael Fahlman.

**IT IS SO ORDERED** this 9th day of October, 2024.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[32] Doc. 239, App. 8 (noting that Vizient holds 70% of the "Vizient DMS Market").