**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ENDURE INDUSTRIES, INC.** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:20-cv-3190-X** |
| | § | |
| **VIZIENT, INC., VIZIENT SUPPLY,** | § | |
| **LLC, VIZIENT SOURCE, LLC, and** | § | |
| **PROVISTA INC.** | § | |
| | § | |
| **Defendants.** | § | |

---

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS

---

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES ................................................................................. ii

I.      INTRODUCTION ..................................................................................... 1

II.     FACTUAL BACKGROUND ....................................................................... 2

III.    ARGUMENT AND AUTHORITIES ........................................................... 10

        A.      Endure has complied or substantially complied with all portions
                of the Court's Discovery Order ...................................................... 11

                1.      Endure has produced any remaining data from Fishbowl. ............. 12

                2.      Endure has made extensive efforts to reproduce any unreadable
                        documents from Fishbowl in a readable format, and when
                        unsuccessful, has produced reports encompassing all data available
                        on Endure's Fishbowl account. ........................................... 13

                        a.      Endure's Efforts .................................................. 13

                3.      Endure has made its best efforts to retrieve the lost Fishbowl data.
                        ................................................................................ 17

        B.      Vizient's requests for spoliation sanctions fail because ample
                evidence in this case addresses the same information Vizient seeks
                from Fishbowl ............................................................................ 18

                1.      Endure did not terminate Fishbowl in bad faith or in relation to this
                        litigation ..................................................................... 18

                2.      Independent of Fishbowl, Endure produced thousands of
                        documents showing it held inventory, sold products, and
                        maintained operations from 2018 to 2022. ........................... 19

        C.      Vizient's claimed prejudice is speculative at best and fictitious at
                worst. 21

        D.      Request for Fees and Further Production of Fishbowl Data. .................... 25

IV.     CONCLUSION ......................................................................................... 26

## TABLE OF AUTHORITIES

**Cases**

*Ashton v. Knight Transp., Inc.*,
      772 F. Supp. 2d 772 (N.D. Tex. 2011) ........................................................................ 10, 22

*Bisous Bisous LLC v. Cle Grp., LLC*,
      No. 3:21-CV-1614-B, 2021 WL 4219707, at *3 (N.D. Tex. Sept. 16, 2021) ................... 15

*Cleary v. Am. Airlines, Inc.*,
      No. 4:21-CV-00184, 2022 WL 5320126, at *7 (N.D. Tex. July 22, 2022) ...................... 11

*Flores v. AT&T Corp.*,
      No. EP-17-00318-DB, 2018 WL 6588586, at *7 (W.D. Tex. Nov. 8, 2018) ................... 22

*NASCO, Inc. v. Calcasieu Television & Radio, Inc.*,
      583 F. Supp. 115 (W.D. La. 1984) .................................................................................... 16

*Rimkus Consulting Grp., Inc. v. Cammarata*,
      688 F.Supp.2d 598 (S.D. Tex. 2010) ........................................................................... 22, 25

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
      269 F.R.D. 497 (D. Md. 2010) .......................................................................................... 22

**Rules & Regulations**

Fed. R. Civ. P.  37(e) ............................................................................................... 11, 12, 26

Fed. R. Civ. P. 37(e)(1) ..................................................................................................... 23

Fed. R. Civ. P. Rule 37(b)(2)(C) ....................................................................................... 27

Fed. R. Civ. P. Rule Rule 37(b)(2)(e)(2) ............................................................. 11, 14, 15, 19

Plaintiff Endure Industries, Inc. ("Endure" or "Plaintiff") files this Response in Opposition to Defendants' Motion for Sanctions (Dkt. 274, the "Motion"), and respectfully shows the Court as follows:

## I.    <u>INTRODUCTION</u>

As a preliminary matter, this Motion is moot because this Court's ruling on Vizient's Motion for Summary Judgment disposed of Endure's claims. Nevertheless, as Vizient has not withdrawn its Motion, Endure files this Response in an abundance of caution.

The Motion for Sanctions is yet another iteration of Vizient recasting Endure's arguments and evidence to service Vizient's preferred narrative.[1]

Spoliation sanctions, where appropriate, are intended to restore an innocent party to the same position they would have been in absent the alleged spoliation. Sanctions are not intended to grant a windfall of evidentiary conclusions and jury instructions contrary to established evidence, as Vizient seeks here. Vizient's requested sanctions should be rejected because they far exceed the scope of possible prejudice, if any, suffered by Vizient.

Vizient claims that Endure hoodwinked them into a false reality that certain Fishbowl files produced by Endure could be accessed without a Fishbowl account (or at all). Endure and its counsel made extensive efforts to recover lost Fishbowl data and to convert unreadable files into readable formats; However, technical difficulties

---

[1] *See generally*, Dkt. 105 (Motion to Dismiss mischaracterizing Endure's claims; Dkt. 213 (Motion to Strike Endure's Supplemental Reports, the same); Dkt. 236 (Motion for Summary Judgment, the same).

encountered in such efforts were beyond Endure's control, and the requested sanctions are disproportionate to the alleged violations.

Endure respectfully requests that the Court deny Defendants' Motion for Sanctions. As the Court's order made clear, Endure was compelled to produce all Fishbowl files it had in its possession, whether readable or not. Endure cannot access the hard drive files, and Vizient apparently hasn't tried. Any sanctions flowing from the hard drive files should be limited strictly to the cost of a Vizient subscription to Fishbowl for a duration long enough to visualize the contents of the hard drive files.

## II.   FACTUAL BACKGROUND

Fishbowl is an inventory management software that Endure has utilized on and off since it began operations and sales in early 2018.[2] According to Endure's employee testimony, Endure did not really exercise the full plethora of offerings from Fishbowl until after September of 2020.[3] In approximately May of 2022, Endure's subscription to Fishbowl expired without renewal.[4] Endure elected not to renew Fishbowl so that it could pursue other inventory tracking software that may perform better than Fishbowl to enhance its services.[5] On or about September of 2023, Endure elected to rejoin Fishbowl; however, unbeknownst to Endure at the time, the data maintained in the previous data base was lost or destroyed due to the gap in subscription services.[6] There is no evidence that Endure ever intended to destroy evidence. Instead, all evidence

---

[2] App. 33 (Dep. Tr. Endure Corp. Rep. 110:4-23).
[3] App. 14 (Dep. Tr. Emily Lawrence at 31:17-32:23).
[4] App. 33 (Dep. Tr. Endure Corp. Rep. 110:4-23).
[5] App. 33-34 (Dep. Tr. Endure Corp. Rep. 110:4-111:19).
[6] App. 33-34 (Dep. Tr. Endure Corp. Rep. 110:4-111:19).

indicates an unintentional loss of information transpired as a result of a routine business decision.

Several months after Endure's first subscription to Fishbowl had expired, on March 9, 2023, Vizient served its first round of discovery requests, seeking "Documents related to [Endure's] capacity to manufacture, sell, and/or distribute Products, including but not limited to inventory records…".[7] Endure's employees "collected everything that Fishbowl had available" and produced it to Vizient.[8] Vizient has been in possession of relevant Fishbowl files since Fall of 2023. Endure produced as much data as it had in the form of Fishbowl backup files that exported all the information from the Fishbowl Software. Since that time, Endure has not become aware of any effort from Vizient to actually view the files in a Fishbowl platform. Instead, it turned to motion practice seeking reproduction of the Fishbowl data export files.

The Motion for sanctions attempts to convince the Court Endure was hiding something. That is simply not the case. In addition to the volumes of records regarding inventory, sales, and product information produced to Vizient,[9] Vizient learned of the Fishbowl database limitations from Endure witnesses themselves. On November 29, 2023, approximately six weeks after Endure produced the Fishbowl data to Vizient, Vizient investigated the Fishbowl topic at length during the deposition of Emily Lawrence. Ms. Lawrence testified that Endure no longer had its initial Fishbowl Server:

> Q    So prior to 2021, would there be any Fishbowl sales records?
> **A    Some, but we don't have that database anymore.**

---

[7] App. 73 (Defendants' First Set of Discovery Requests).
[8] App. 33-34 (Dep. Tr. Endure Corp. Rep. 112:25-114:4).
[9] *See* Ex. 1.

| | |
|---|---|
| Q | Why is that? |
| **A** | **Because we stopped using Fishbowl.** |
| Q | When did you stop using Fishbowl? |
| **A** | **I don't recall when.** |
| Q | In 2021? |
| … | |
| **A** | **Possibly.** |
| Q | Does Endure use Fishbowl today? |
| **A** | **Yes.** |
| Q | So it's used Fishbowl on and off? |
| **A** | **Yes.**[10] |

Not only did Ms. Lawrence testify that it no longer had its original Fishbowl database, but she also went on to articulate what information was available to Endure:

| | |
|---|---|
| Q | Do you know for roughly how long Endure did not use Fishbowl? |
| **A** | **I don't recall.** |
| Q | How would we find that out? |
| **A** | **The Fishbowl records of the new database.** |
| Q | So you would just have to see when -- when there is data and when there isn't data? |
| **A** | **Yes.** |
| Q | So Endure stopped using Fishbowl at certain points in time, correct?[11] |

Vizient was then and still is in possession of Endure's data files from Fishbowl. Not accepting that Endure had produced everything it had in Fishbowl, Vizient moved to compel further production from Fishbowl. In response, Endure stated to the Court:

"Because Endure's original contract with Fishbowl expired in 2022, the data files contained therein that had not been retained by Endure, reverted back to Fishbowl. Endure has no way of accessing or retrieving that data and has not been able to confirm if it still exists." Dkt. 199 at 5.

Endure pointed to the files it already produced in the Fishbowl data extract as the complete set of information as it was available in Endure's ordinary course of business,

---

[10] App. 19 (Dep. Tr. Emily Lawrence at 50:9-24).
[11] App. 19 (Dep. Tr. Emily Lawrence at 51:22-52:7).

stating plainly that "Endure has no further information to produce from Fishbowl" because it already scraped all the Fishbowl data it could have. Dkt. 199 at 5–6. Vizient insisted that Endure's production is "utterly useless," but did not provide any evidence that it attempted to gain access through the Fishbowl software directly. Dkt. 203 at 6. The Court then issued its April 9, 2024 Order which required Endure to reproduce the unreadable Fishbowl production in a readable format, produce any remaining documents withheld from Fishbowl, and to update the court on efforts to locate the information from Endure's terminated Fishbowl account.

Endure made every effort it could to locate, download, and to access documents from Endure's prior Fishbowl subscription. Endure did as much as it feasibly could to comply with the Court's order—even creating a new user account in its Fishbowl subscription so that counsel could access the Fishbowl server and information directly. As set out in the attached affidavit of Hayden Hanson, Endure experienced a host of technical obstacles in the process of recovering the prior Fishbowl data, and ultimately reached an impasse.

After receiving the Order, Endure thoroughly investigated the potential locations, repositories, or third parties which may have Endure's Fishbowl data. In addition, to locating information available for export in a "readable" format from Fishbowl, Endure worked to find all other Fishbowl documents in existence. Their efforts resulted in locating an Endure laptop computer that formerly housed Fishbowl software and would

potentially have electronic traces remaining on the hard drive.[12] Counsel for Endure engaged a third-party vendor to evaluate the laptop's hard drive and determine whether any information related to Fishbowl remained.

Meanwhile, because of the technical difficulties surrounding the "unreadable" documents (which impacted Endure and Vizient equally), Endure's counsel used Fishbowl's "report" function to gather all data available in Endure's Fishbowl database in a readable format. Each of these Reports were produced to Vizient on April 26, 2024, and no information available in Fishbowl at the time of the reports was withheld.[13]

The recovered hard drive files and previously produced Fishbowl files were a different story. Although backup data files were present on the hard drive, Endure's vendor could not access them. The Fishbowl data files were in an "iwa" Format. This format is the same that was produced to Vizient in 2023, but Endure could not make them "readable" for production for Vizient (for the reasons discussed in this Response). In furtherance of the Court's order (requiring Endure to produce "all" Fishbowl documents) Endure elected to produce the hard drive files in the form that Endure possessed them, as they could have stored the information that Vizient sought through its Motion, and potentially the information to resolve the issue of lost Fishbowl data.

A month later, Vizient contacted Endure, stating the hard drive files were not readable and that Fishbowl software was too expensive to purchase.[14] Endure made clear that it was happy to attempt more options to access the hard drive files, but that it did

---

[12] App. 2 (Hanson Decl.) ¶ 5.
[13] App. 91 and beyond (Fishbowl Reports).
[14] App. 3 (Hanson Decl.) ¶ 14.

not know that it was possible.[15] Endure's counsel contacted Fishbowl representatives, and, over the course of several meetings, Fishbowl representatives were able to remote operate counsel's Fishbowl software account in an attempt to open these hard drive files. The attempt was unsuccessful. Numerous additional efforts were made to find a way to import the data into Endure's Fishbowl server, but none worked.

Through these efforts, it became clear that the software Endure had was an updated version of the Fishbowl software that created the hard drive files.[16] Because the older files were incompatible with the newer software, counsel for Endure asked Fishbowl representatives to revert counsel's Fishbowl software to a prior version of Fishbowl in order to open communications between the files and the server.[17] Ultimately, these efforts crashed counsel's Fishbowl account (rendering it useless) and resulted in no clear answers for how to recover the data.[18]

Fishbowl informed Endure's counsel that the next options to view the hard drive files would require additional purchases of software, potential expenses and costs for dedicated resources from Fishbowl.[19] More importantly, Fishbowl informed Endure's counsel that such efforts would carry the risk of corrupting Endure's current Fishbowl server (which serves Endure's entire business—not just the version on counsel's desktop), which would not only risk further destruction of information and data, but also the

---

[15] App. 82 (May Email Correspondence Between Counsel).
[16] This is due to regular software updates performed by Fishbowl, not due to any act by Endure.
[17] Because there is no way of knowing which prior iteration of the software created the files at issue, this was a trial and error process to try to find the correct version.
[18] App. 5-6 (Hanson Decl.) ¶¶ 18-24.
[19] App. 6 (Hanson Decl.) ¶ 23.

continued operations of Endure's business.  For all of that—Fishbowl representatives remained skeptical that such efforts would even work.

As a result of this ongoing dialogue with Fishbowl, Fishbowl suggested that the files contained in the hard drive may in fact be from the same subscription that Endure currently operates (rather than, as both Endure and its counsel initially believed, its prior subscription). If that is the case, all information contained in the reports from the account are already in Vizient's possession, as Endure has produced reports containing all of the data in Endure's current Fishbowl server. If it is not, and the backups relate to Endure's prior Fishbowl subscription, then all the information is preserved on the hard drive, but it cannot be accessed without risking Endure's entire Fishbowl server. Asking Endure to undertake that type of risk is unreasonable and disproportionate to the needs of this lawsuit.

Alongside the April 26 production of Endure also provided the Court with a status update on Endure's efforts to recover the lost Fishbowl data. Endure honestly informed the Court that:

> The computer **which housed Endure's Fishbowl software** is in Endure's possession and was sent by counsel to a third-party vendor to determine its contents. ***According to the vendor reviewing*** the hard drive's contents, there are operating files and backup files from Endure's former Fishbowl subscription account which are recoverable… No other documents from Endure's prior Fishbowl subscription account have been discovered or are known at the time of this Status Report. Dkt. 228 (emphasis added).

Vizient's Motion weaponizes that statement in a mudslinging campaign that is completely unsupported by the facts. At no time did Endure or its counsel seek to evade or mislead the Court. Vizient's arguments otherwise ignore that Endure's status report

specifically noted that its belief was made "[a]ccording to the vendor reviewing." Neither Endure nor counsel are computer forensic experts. Endure relied on the information and insights provided by its vendor in reviewing the documents, and made that abundantly clear in its status report. Vizient chose to ignore that fact when it filed its Motion, representing to the Court:

> After the Court compelled Endure to produce its Fishbowl data, Endure told Vizient and the Court it fixed its mistakes and found over four years of data it thought it had lost. (Dkt. 228.) Dkt. 274 at 1.

> (Dkt. 228 at 2 (stating the 'hard drive's contents . . . are operating files and backup files from Endure's former Fishbowl subscription') Dkt. 274 at 7.

> Recall that Endure told the Court it found the lost data that the Court ordered it to search for. (Dkt. 228.) Dkt. 274 at 8.

> Endure originally told Vizient and the Court that these files were from Endure's first subscription. (App. 2; Dkt. 228 at 2.) Dkt. 274 at 11.

> Endure stated it found and produced a hard drive of Fishbowl files, and that the 'hard drive's contents . . . are operating files and backup files from Endure's former Fishbowl subscription.' (Dkt. 228 at 2.) Dkt. 274 at 12.

Vizient's purported outrage that Endure learned new information does not render its status update untrue or misleading. The Fishbowl representatives that worked to recover the hard drive files had a different view of the documents than the vendor. The information on the hard drive has never been confirmed in either direction, and Endure certainly does not know. Endure simply passed along the information it was being given. That is not a basis for sanctions.

Vizient's Motion for Sanctions stretches or omits the realities of Endure's production of documents and efforts to comply with the Court's discovery order. For the reasons stated below, Endure requests the Court deny the motion.

### III.   ARGUMENT AND AUTHORITIES

"Spoliation is the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 799 (N.D. Tex. 2011). However, "[d]estroying or altering evidence, however, does not necessarily mean that the party has engaged in sanction-worthy spoliation." *Id.* at 799–800. "Instead, the Court must first find the existence of a duty to preserve the information, a culpable breach of that duty, and resulting prejudice to the innocent party." *Id.* at 800.

Federal Rule of Civil Procedure Rule 37(e) governs the framework for spoliation of electronically stored information ("ESI") and the sanctions a court may impose when ESI is not preserved. When considering lost or destroyed electronically stored information, the Federal Rules govern the Court's inquiry:

e.   If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1)   upon finding prejudice to another party from loss of the information, may order measures **no greater than necessary to cure the prejudice**; or

(2)   **only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may**:

> (A)    presume that the lost information was unfavorable to the party;
>
> (B)    instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C)    dismiss the action or enter a default judgment.

FED. R. CIV. P. 37(e).[20]

To apply sanctions under Rule 37(e), four predicate elements must exist before a court can even assess whether there is prejudice: "[1] there is ESI that should have been preserved; [2] that ESI has been lost; [3] the ESI was lost because of a party's failure to take reasonable steps to preserve it; and [4] the ESI cannot be restored or replaced." *Cleary v. Am. Airlines, Inc.*, No. 4:21-CV-00184, 2022 WL 5320126, at *7 (N.D. Tex. July 22, 2022). If those elements are met, *and the Court finds that there is prejudice*, then the Court's order is limited to what is "necessary to cure the prejudice." FED. R. CIV. P. 37(e)

## A.    Endure has complied or substantially complied with all portions of the Court's Discovery Order.

Vizient's claim that "Endure violated the Court's discovery Order by not producing all of its Fishbowl data" is entirely divorced from reality. Dkt. 274 at 10. Endure has provided Fishbowl data in numerous file formats, files extracted from computer hard drives, and from Endure's current Fishbowl server, all in the form that they are available to Endure.[21] Vizient's motion also establishes that it received Endure's computer hard drive files and PDF Fishbowl reports. Endure is not withholding Fishbowl

---

[20] The more severe sanctions under Rule 37(b)(2)(e)(2) are not at issue in Vizient's Motion. *See* Dkt. 274 at 22 ("Vizient is not asking for the most severe sanctions under Rules 37(b)(2)(A) and (e)(2), like dismissing the lawsuit or giving an adverse-inference instruction to the jury, which are appropriate if Endure intentionally deleted its Fishbowl data to prevent Vizient from using it..").

[21] Part of the problem appears to be that Vizient cannot, or will not, access Fishbowl's file format.

documents on the basis of privilege or any other objection—Endure simply does not have any more to give.

The Court's Order required Endure to Endure to "(1) produce any remaining data from Fishbowl that Endure has not produced, (2) reproduce any unreadable documents from Fishbowl in a readable format, and (3) make its best efforts to retrieve the lost Fishbowl data and provide a status report of those efforts." Dkt. 225. Endure has done all of those things to the best of its ability, and has gone above and beyond to comply with the Court's order.

### 1. Endure has produced any remaining data from Fishbowl.

Upon the Court's order, Endure's counsel requested that Endure re-search its files for any Fishbowl data that may have been omitted from the initial production. The investigation revealed a laptop computer from a former Endure employee, and Endure's counsel engaged a third-party vendor to conduct a forensic examination.[22] When the vendor reported that the laptop's hard drive contained Fishbowl documents, Endure's counsel instructed the vendor to create an "image" of the hard drive, which counsel for Endure produced to Vizient on April 22, 2024.[23]

---

[22] App. 2-3, (Hanson Decl.) ¶¶ 5-6.
[23] *Id.* ¶ 7.

**2. Endure has made extensive efforts to reproduce any unreadable documents from Fishbowl in a readable format, and when unsuccessful, has produced reports encompassing all data available on Endure's Fishbowl account.**

Vizient's request for sanctions hinges on Endure's production of a lower number of readable Fishbowl files,[24] ignoring that it has received all information and data from Endure's Fishbowl server.

**a. Endure's Efforts.**

Endure fully acknowledges the Court's order to reproduce relevant inventory data from its Fishbowl server in a readable format, and has made every effort to do so. Endure (and Vizient) faced significant obstacles in retrieving and producing the data from these files. As detailed in the affidavit of Hayden Hanson, counsel for Endure (1) worked directly with Endure to gather additional data (including a laptop, the contents of which were sent to Vizient), (2) engaged a third-party forensic vendor to evaluate the laptop's hard drive and image any Fishbowl data; (3) downloaded Fishbowl onto counsel's desktop; (4) worked directly with Fishbowl representatives to attempt to read or convert the files using the Fishbowl software.[25]

Despite these extensive efforts, neither Endure nor its counsel (nor third-party vendors nor Fishbowl representatives themselves) have been successful in converting the files.[26] More specifically, those Fishbowl data files are in an "iwa" format that is typical Fishbowl's export of data and backup files. The data files can no longer be opened using

---

[24] *See* Dkt. 274 at 6 ("But Endure never said whether those 21 files are the readable versions of the unreadable files that the Court ordered Endure to produce, and Vizient cannot tell because it does not know what the unreadable files should say.").

[25] App. 2-6 (Hanson Decl.) ¶ 4-24.

[26] *Id.*

Endure's existing Fishbowl software subscription due to software incompatibility. Endure understands that the issue stems Fishbowl's regular software updates and that files created from prior iterations of Fishbowl's software are incompatible the updated software.[27] In other words, Endure was unable to confirm the contents of its previously produced Fishbowl files to recreate them on a per-document basis.[28]

When Endure's efforts were unsuccessful, counsel for Endure instructed Endure employees to create a Fishbowl server login for counsel to conduct a review of the database.[29] With those credentials, counsel exported the data in PDF form through Fishbowl's "report" generating function.[30] Counsel sought to produce every available report from Fishbowl, regardless of the information is contained in the report, and the reports were produced to Vizient as PDF files.[31] In other words, Endure went above and beyond its discovery obligations—creating reports that captured all of the available data on Fishbowl's server.[32] Although the reports are not one for one recreations of previously produced files, to the best of Endure's ability, these reports reflect the entirety of information from Fishbowl that can be produced in readable format.

---

[27] *Id.* ¶ 19.

[28] *Id.* ¶ 27.

[29] *Id.* ¶ 10.

[30] *Id.* ¶ 11.

[31] *Id.* ¶ 12; Exs. 8-28. Because the volume of records in Endure's Fishbowl reports could not be compressed to conform to the Federal Court's filing system, Exhibits 8-28 will be provided to the court by courier at the start of business hours Monday October 14, 2024.

[32] *Id.*

Vizient complains that the number of PDF reports produced does not align with the number of unreadable files.[33] The numerical discrepancy results from the gathering process described above in response to the Court's order. As with Endure's first production of Fishbowl information (and all subsequent productions), Endure endeavored to give Vizient every last drop of data available in Fishbowl. Endure is not withholding any Fishbowl documents.[34] Nor is it simply refusing to attempt to convert the files that Vizient claims are unreadable. Endure made extensive efforts to comply with the Court's order by converting the unreadable files, and when such efforts failed, Endure ran reports encompassing the entirety of the Fishbowl database in order to ensure that Vizient had access to all of Endure's Fishbowl data.

### b. Substantial Compliance.

Endure's efforts to provide Vizient with all available data from Fishbowl constitutes substantial compliance with the Court's Order.[35] Substantial compliance with a Court's order requires a showing that the litigant made a "reasonably diligent and energetic attempt to accomplish what was ordered." *Bisous Bisous LLC v. Cle Grp., LLC*, No. 3:21-CV-1614-B, 2021 WL 4219707, at *3 (N.D. Tex. Sept. 16, 2021) (adopting the

---

[33] *See* Dkt. 274 at 6 ("But Endure never said whether those 21 files are the readable versions of the unreadable files that the Court ordered Endure to produce, and Vizient cannot tell because it does not know what the unreadable files should say.").

[34] App. 3 (Hanson Decl.) ¶ 12.

[35] To avoid any confusion or misunderstanding, Endure's first production of the Fishbowl server data export produced the unreadable files at issue in Vizient's motion to compel. Endure believes that all information contained in Fishbowl has been reflected into the reports produced in Endure's second production to Vizient, but neither Endure nor its counsel is a qualified subject matter expert capable of detecting whether Fishbowl's report function transmits all the same data from the server. For that reason, Endure resists absolute statements or representations to the Court.

"substantial compliance" test set forth in *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 583 F. Supp. 115, 120 (W.D. La. 1984)). Endure easily satisfies this test.

As detailed above, Endure enlisted the services of numerous third parties in attempting to identify the contents of the unreadable documents from Fishbowl.[36] Endure incurred fees and expenses in utilizing these resources.[37] Endure's employees and counsel expended dozens of hours in these efforts, and ultimately were able to produce as much data as was available from the Fishbowl to the best of their capabilities. Because of those efforts, Vizient has received as much data from Fishbowl in PDF format as could be gathered from Endure's Fishbowl Server. The difference between the previous Fishbowl production and the production following the April 9, 2024 Order is one in form and not substance.

Despite the discrepancy in volume of documents—approximately 20 less documents in the second production—the contents and information available to Endure is completely produced. Any date limitations reflected in the Fishbowl files is a result of the available data, and not because of an election or choice in what to produce or withhold. Endure has made every effort to produce all data from Fishbowl in response to the Court's April 9, 2024 Order, and it expended substantial and reasonable efforts to meet the Court's directives.

---

[36] App. 2-6 (Hanson Decl.) ¶¶ 4-24.
[37] *Id*. ¶¶ 8 & 10.

Because Endure has substantially complied with order and produced all of the Fishbowl data that it could in a readable format, Endure substantially complied with the April 9, 2024 Order and sanctions would be inappropriate.

### 3. Endure has made its best efforts to retrieve the lost Fishbowl data.

Endure also made extensive efforts to recover lost data related to its prior Fishbowl subscription (discussed below). These efforts included the recovery of a laptop computer that Endure believed may have had hard drive files pertaining to its terminated Fishbowl server. The laptop was sent for forensic analysis and imaging by a third-party vendor, but despite Endure's best efforts—including purchasing additional resources and engaging in multiple attempts to visualize the data—the hard drive files remained inaccessible.[38]

When Vizient complained that the hard drive was unreadable, Endure's counsel worked with Fishbowl representatives to resolve the issue. Ultimately, they were unsuccessful, and Fishbowl representatives indicated that further attempts to recover the data could risk substantial interference with Endure's operations and result in unknown costs, with no guarantee of success.[39]

Further analysis of the files' metadata revealed that these files were not even from Endure's prior Fishbowl subscription, but were instead from its current subscription.

---

[38] App. 2-6. (Affidavit of Hayden Hanson, ¶¶ 2-24).
[39] App. 6 (Affidavit of Hayden Hanson, ¶ 23).

In other words, Endure has made all reasonable efforts to recover any lost data from its prior Fishbowl subscription, and has produced to Vizient the entirety of what it has.

**B.   Vizient's requests for spoliation sanctions fail because ample evidence in this case addresses the same information Vizient seeks from Fishbowl.**

Vizient's claims related to the lost Fishbowl data (from its earlier subscription to Fishbowl) fail because Vizient cannot show intent (indeed, the Fishbowl documents were not even at issue in this lawsuit at the time its prior subscription expired) and because it cannot show prejudice.

### 1.   Endure did not terminate Fishbowl in bad faith or in relation to this litigation.

Endure allowed its Fishbowl subscription to expire in 2022, seeking other options for its business. Not finding any, it renewed its subscription shortly thereafter. What resulted was the unfortunate, but wholly unintentional, loss of data related to the first subscription.

The expiration of Endure's first Fishbowl subscription was a routine business decision made in the ordinary course of business, and was unrelated to the litigation. Endure is a small, family-owned company that sought to explore other inventory software options that may benefit their company.[40] It did not make any conscious or intentional decision to destroy data. It made a business decision to terminate its Fishbowl subscription that regrettably resulted in the loss of its initial Fishbowl server data.

---

[40] App. 33 (Dep. Tr. Endure Corp. Rep. at 110:4-23)

The Fishbowl termination was not made with any intent to destroy evidence or prejudice against Defendants.[41] Indeed, at the time, Fishbowl documents were not even at issue in the case. It was not until approximately **six months after the subscription expired** that Endure received Vizient's first set of discovery in this lawsuit.[42] Any attempt by Vizient to infer intent or bad faith is wholly unsupported by the facts. Once aware of the issue, Endure made extensive efforts to recover the lost data, as described above.

### 2.  Independent of Fishbowl, Endure produced thousands of documents showing it held inventory, sold products, and maintained operations from 2018 to 2022.

Vizient's Motion also ignores the reality that the information it seeks has been produced from other sources. Fishbowl is a management software. It reflects inputs that are entered from other sources—it is not the sole source of that data. Endure has provided extensive information, data, and testimony that reflects the information available from Fishbowl. In that sense, Fishbowl is a repository, not a single source of information or data—even if the repository is gone, the remaining evidence cannot be ignored.

Endure has produced multiple categories of information that reflect inventory, product sales, and expenses incurred acquiring products during the time period of the first Fishbowl subscription. Because there are thousands of these documents, Endure has provided a sample of this evidence to the Court on a flash drive for its consideration, which contains examples of the following.[43]

---

[41] *Id*. *see also* App. 38 at 159:2 – 160:7.

[42] App. 67. (Vizient's First Set of Discovery Requests).

[43] This flash drive was delivered to the Judge Starr, who retained the Motion as to the requests pertaining to the trial and jury instructions. *See* Dkt. 282. An identical flash drive has also been delivered to counsel for Vizient.

*Endure's Inventory Invoices and Shipments*: Endure produced thousands of documents from suppliers, shippers, and customs that reflect the amounts of product ordered by Endure. These documents do not only establish that Endure held specific product inventory, but establishes Endure's capabilities in sourcing, acquiring, and storing product inventory. Additionally, in response to a subpoena served by Vizient, a logistics company contracts by Endure produced dozens of receipts and invoices reflecting shipments of inventory received by Endure. This evidence exists independent of the Fishbowl server.

*Endure's Sales Reports*: Endure has produced the entirety of their sales data to Vizient in this litigation. The two excel spreadsheets contained in the "Endure Sales Records" display Endure sales from 2018 through the year 2022 (the four years of lost Fishbowl data). The Key fields in this document in this context are the "lineitem name" and "lineitem quantity" fields. Together with the "lineitem fulfilment status" these fields establish how much of what product was ordered and whether Endure fulfilled the order. This evidence exists independent of the Fishbowl server.

*Endure's General Ledgers*: Endure's General Ledgers were produced from QuickBooks following the Court's April 9, 2024 Order. The General Ledger includes fields for cost of goods sold and inventory assets that Endure Acquired. These documents show the approximate dates Endure acquired product inventory, the amounts it paid for that inventory, and a description of the product Endure acquired. Regardless of whatever data might have been contained in Fishbowl, this evidence reflects that Endure held

inventory in the reflected time periods. This evidence exists independent of any Fishbowl server.

*Sales Taxes*: Endure's Product Sales Taxes identify the precise order number product, date, region shipped to, point of purchase, and taxes accumulated for Endure's sales history. These documents establish that Endure not only held the inventory reflected in the spreadsheet, but how much it was able to sell and ship to various regions across the United States. This evidence exists independent of the Fishbowl server.

Endure is sensitive to the Court's time, and does not request that the Court conduct an in-depth review of the evidence contained on this flash drive[44] (unless it wishes to). Rather, Endure submits this merely to show the overwhelming quantity of information related to the precise issues that would be captured by Fishbowl. Even a cursory review of this evidence eviscerates Vizient's misleading contentions that "Endure's inventory data is gone" and "Endure's inventory data cannot be restored or replaced." Those allegations are just not true.

Fishbowl is a repository, it is not the original source of anything but the reports produced to Vizient. For that reason alone, Vizient's Motion should be denied.

## C.   Vizient's claimed prejudice is speculative at best and fictitious at worst.

Vizient cannot show that it has been prejudiced precisely because of the wealth of evidence reflecting inventory, product sales, and expenses incurred acquiring products during the time period of the first Fishbowl subscription that has been produced in this

---

[44] Which is not the entirety of the evidence supporting Endure's ability to acquire, warehouse, sell, and distribute disposable medical supplies.

case (discussed above, and isolated for Vizient's convenience on the flash drive accompanying this Response).

"A party suffers prejudice where it cannot present 'evidence essential to its underlying claim.'" *Coastal Bridge Co., L.L.C v. Heatec, Inc.*, 833 Fed. App'x. 565, 575 (5th Cir. 2020) (citing *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 532 (D. Md. 2010)). "Prejudice to the non-culpable party can range from an utter inability to prove claims or defenses to minimal effects on the presentation of proof." *Ashton*, 772 F.Supp.2d at 801 (citing *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F.Supp.2d 598, 613 (S.D. Tex. 2010)). "Generally, the prejudice element is satisfied 'where a party's ability to present its case or to defend is compromised.'" *Id.*

Defendants' claims of prejudice are speculative and contradicted by the evidence. Where the "abundance of preserved information [appears] sufficient to meet the needs of all parties," as is the case here, the missing Fishbowl records have minimal effect on Vizient's ability to defend against Endure's claims. FED. R. CIV. P. 37(e)(1) Committee Notes. *See also Flores v. AT&T Corp.*, No. EP-17-00318-DB, 2018 WL 6588586, at *7 (W.D. Tex. Nov. 8, 2018) ("Without an articulated reason as to why the lost ESI affects his presentation of proof or is prejudicial, the Court is unable to find that Plaintiff has suffered any prejudice. . ."); *Rimkus*, 688 F.Supp.2d at 616 ("Courts have held that speculative or generalized assertions that the missing evidence would have been favorable to the party seeking sanctions are insufficient.").

As the Motion states, Vizient's alleged prejudice from lost Fishbowl data results only in "possible impacts" to Vizient's ability to defend against Endure's Claims. Dkt.

274 at 15. Defendants cannot show that the lost Fishbowl information prejudiced their ability to defend against Endure's claims without making erroneous characterizations or extrapolation of Endure's claims and Endure's experts' opinions.

Vizient claims that because "Endure has argued that it met the minimum requirements to bid for Vizient's tapes contract," the "missing Fishbowl data prejudices Vizient's ability to confirm Endure's available inventory around the time of the tapes bid."[45] There are two glaring issues with that representation to the Court.

First, Endure's own deposition testimony indicates Endure was actively sourcing for medical tapes suppliers at the time of the Vizient tapes bid, holding little or no inventory.[46] In other words, Vizient can introduce through testimony the very point on which it seeks jury instruction. And beyond this testimony, Vizient has Endure's order history, sales history, accounting summaries, and email correspondences with medical tape manufacturers during the relevant periods to provide whatever strategic defense they wish to pursue.

Second, and perhaps more fundamentally, Vizient never rejected a bid from Endure because of inventory levels. These "minimum requirements" referred to in Vizient's Motion is classic litigation pretext—a narrative created after the fact (specifically

---

[45] *See also Id*. at 20 ("Endure will argue it had the product inventory on hand to meet the demand of Vizient's members and sell hundreds of millions of dollars of products instead of the $1.5 million it actually sold over six years." "Endure will argue it met the requirements to bid for Vizient's tapes contract because it had tapes in stock to sell, it should have won that contract because it stocked the depth and breadth of tapes needed to score well, and its costs of goods sold were improving such that it would have gone from $0 profits to $88 million of it.").

[46] App. 46-47 (Dep. Tr. Akshay Menon Vol. 2 at 204:13 – 206:13.

for litigation) to explain Vizient's rejection of Endure, and which Vizient did not state at the time, either internally or to Endure.

Additionally, Vizient's claim that it has been prejudiced in its ability to refute Endure's damages expert (John Strong) relies on a miscasting of Strong's opinions. Vizient's requested relief is predicated on three scarecrow arguments. Dkt. 274 at 19.

First, Vizient contends that Fishbowl data from 2018 to 2022 is need because "Endure will argue it had the product inventory on hand to meet the demand of Vizient's members and sell hundreds of millions of dollars of products instead of the $1.5 million it actually sold over six years." Dkt. 274 at 19. To remove any concern from Vizient, Endure does not, and will not at trial, argue that it had a numerical amount of inventory in 2018 to 2024  "to meet the demand of Vizient's members." Why would it? It has produced copious amounts of evidence, including the documents provided to the Court by courier, that would refute that contention. Endure will support its capabilities with the evidence it has. The jury can determine for itself what that evidence should mean without an instruction deciding it for them.

Second, Vizient claims "Endure will argue Strong's $88 million damages model is reasonable because Endure could have stocked 60 different products, even though it mostly only sold twelve." Although more fully set out in Endure's Response to Vizient's Motion to Exclude Expert Testimony of John Strong (Dkt. 253.), Mr. Strong's opinions are about what Endure *would have* achieved if competing in a competitive market. (Dkt. 253, at 4-6.) As the Motion itself states, Strong's opinions do not rely on the numerical amount of inventory was in Endure's warehouse on a given date between 2018 and 2022, instead

it relies on Endure's ability to compete in a but for world—that is, competitive market free of Vizient's conduct. *Id*. Even Vizient's Motion confuses this point, arguing that it must have the inventory data in Fishbowl to fully attack Strong, and in the same breath arguing Strong "fail[ed] to consider Endure's inventory at all." Dkt. 274 at 16.

Third, Vizient claims it needs the data to prove its "minimum requirements" argument. This litigation tactic is addressed above. The former two arguments fail to come close to justifying the harsh sanctions sought by Vizient.

The voluminous records of sales orders, inventory purchase summaries, individual purchase orders, and Endure's sales data mitigates or completely remedies any of the "possible" prejudice it alleges it may experience in attacking Strong.

## D.   Request for Fees and Further Production of Fishbowl Data.

In addition to the unnecessary trial instructions and limitations, Vizient requests two additional forms of relief through a further production form Fishbowl and award of costs and fees. For the reasons stated above, Vizient is not entitled to any of this.

As Endure has articulated throughout this Response, it does not know what else it could produce in response to a further order. Endure would only have another data set of "iwa" backup files that Vizient cannot view and supplemented reports with new data since Endure's last production. Neither of which are at all necessary considering the Court's ruling on summary judgment and the wealth of inventory data produced elsewhere. Moreover, whatever costs or expenses Vizient seeks under its spoliation theory relates to speculative or fictitious harm. Without

prejudice, then the Court's ordering fees would be beyond the scope of what is "necessary to cure the prejudice." FED. R. CIV. P.  37(e).

Vizient's second attempt to recover costs relies entirely on the fact that Endure did not squarely reproduce 43 exact Fishbowl files, just all the relevant information from the database. Endure substantially complied with the court's order and imposition of costs incurred by expensive attorneys because Endure could not recover 43 aged files would be manifestly unjust. FED. R. CIV. P. Rule 37(b)(2)(C).  The difference between the Court's order and Endure's production comes down to the number of documents reproduced from Fishbowl, not the information. Endure could do no more without immense risk of costs and operational burdens that are neither proportional to the information Vizient has elsewhere or were known prior to April 2024. Neither Vizient nor Endure have been able to review the 43 Fishbowl files at issue, but regardless the evidence suggests that all Fishbowl data and information that is available to Endure has been fully produced to Vizient.

## IV.   CONCLUSION

For the foregoing reasons, Endure respectfully requests that the Court deny the Defendants' Motion for Sanctions. Endure has made diligent efforts to comply with the Court's discovery orders and has substantially complied with them, and has acted in good faith throughout the discovery process.  The technical difficulties encountered were beyond Endure's control, and the requested sanctions are disproportionate to the alleged violations.

Dated: October 11, 2024                        By  */s/ Andrés Correa*
                                                 Christopher W. Patton
State Bar No. 24083634
cpatton@lynnllp.com
Andrés Correa
State Bar No. 24076330
acorrea@lynnllp.com
Greg Brassfield
State Bar No. 24079900
gbrassfield@lynnllp.com
Jamie R. Drillette
State Bar No. 24105820
jdrillette@lynnllp.com
Hayden G. Hanson
State Bar No. 24110598
hhanson@lynnllp.com
Zhenmian Xu
State Bar No. 24135820
sxu@lynnllp.com

**LYNN PINKER HURST &
SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, TX 75201
Telephone: 214-981-3800
Facsimile: 214-981-3839

***Attorneys for Plaintiff Endure Industries,
Inc.***

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 11, 2024, a copy of the above was served on all parties of record *via CM/ECF*.

                                                 */s/ Andres Correa*
                                                 Andres Correa